McCord vs. Hill.

<div style="float:right">

| | |
|---|---|
| 111 | 499 |
| s117 | 307 |
| 117 | 308 |

</div>

McCord, Appellant, vs. Hill, Respondent.

*September 28 — October 30, 1900.*
*September 26 — October 15, 1901.*

*Public lands: Homesteads: Rights of conflicting claimants: Patent not conclusive: Premature proof: Fraud: Decision of land department construed: Curative act: Pleading: Interior department: Statutes* in pari materia: *Preference right: "Re-entry" as homestead.*

1. If the land laws of the United States confer upon a person a right to public land upon the existence of certain facts, the right becomes fixed when those facts are found to exist by the proper executive officer. If, therefore, a patent is issued to one person when upon the facts so found another is entitled to the land, ultimate rights will not be changed thereby, but the patentee will be considered by the courts to hold in trust for him to whom the land in equity belongs.

2. In an action to charge a trust upon the patentee of public land, it was alleged, among other things, that on February 23, 1891, one J., who had settled upon the land in question before it was open for entry, made application to enter the same, which was rejected on the ground that defendant had already filed a soldier's declaratory statement covering the same land, but upon appeal the land commissioner determined that J.'s prior settlement and residence were established, and defendant's declaratory statement was ordered canceled; that in September, 1892, J. made proof that he had resided on the land nineteen months continuously, and was allowed to commute to a cash entry, although he had not resided thereon fourteen months from the date of his entry as required by the act of March 3, 1890; that some months later he sold the land to plaintiff; that after such sale the land commissioner entered an *ex parte* order declaring J.'s proofs premature and insufficient, and required him to furnish supplemental proofs showing compli-

McCord vs. Hill.

ance with said act; that thereafter the land was reconveyed by plaintiff to J., and after the lapse of sufficient time he attempted to comply with said requirement, but his rights were contested by defendant, who claimed that J. did not settle on the land in good faith and that his residence thereon had not been continuous for the requisite period; that upon a hearing the register and receiver found that J.'s residence up to the time of the first proofs was satisfactorily established, but that his residence subsequent to his conveyance to plaintiff was merely for the purpose of acquiring title for the latter and could not avail J. in making supplemental proof; that such decision was confirmed by the commissioner of the general land office and the secretary of the interior, and the entry and commutation held for cancellation; that subsequently the act of Congress of June 3, 1896, was passed, providing that in cases of premature commutation, where no fraud had been practiced by the entryman in making proof, and where there was no adverse claimants whose rights originated prior to the making of such final proofs, the certificate of entry should be confirmed to the entryman; and that J. made application to the secretary of the interior for confirmation thereunder, which was overruled for the reason that "the entry was not made in good faith and the proof submitted by the entryman was fraudulent, as fully set forth" in the decision of the land commissioner on the contest over J.'s supplemental proofs. *Held,* that the proofs so found to be tainted with fraud were the supplemental proofs offered by J., and that such fraud did not debar him from taking advantage of the curative act of 1896.

3. In such a case it is sufficient for the plaintiff to allege absence of any testimony or proof on a given subject before the officers of the land department, without setting out the testimony in full, and upon demurrer such allegation must be given literal effect, leaving the plaintiff to make proof thereof according to the ordinary rules of evidence.

4. The provision of the act of June 3, 1896, that "whenever it shall appear to the commissioner of the general land office that" certain facts with reference to a premature commutation of a homestead entry exist, the certificate of entry of the homesteader shall be in all respects confirmed to him, etc., was not intended to create the commissioner into a special tribunal having exclusive jurisdiction to pass upon the existence of the facts necessary to relief under the act, but was intended merely to provide, *in pari materia* with the other land laws, for an examination and decision of those questions by the land department, presided over by the secretary

of the interior, and in which said commissioner and all other officers are but subordinates of the secretary, subject to his direction, control, and supervision.

5. Under the provision of said act of June 3, 1896, requiring as a condition of the commutation "six months' actual residence in good faith by the homestead entryman prior to such confirmation," etc., the six months' residence need not have been subsequent to entry, but merely prior to final proof.

6. A preference right of entry based on a contest, given by ch. 89, Laws of U. S. 1880, is a mere privilege to enter and not an entry or a re-entry within the meaning of the act of June 3, 1896, excluding a homestead or commutation entry from the benefit of its curative provisions where the original entry had been canceled and the land made vacant had been re-entered under the homestead act.

APPEAL from an order of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

This was an action asserting full equitable title from the government to the plaintiff, and seeking to charge a trust upon the defendant, who had received the patent. The complaint is very long, but may be abbreviated as follows:

On February 23, 1891, certain lands in the county of Bayfield were opened to entry. One Jacobus, under whom plaintiff claims, had settled on the land in question about January 28, 1891, and on the 23d day of February aforesaid made application to enter the same, which was rejected, for the reason that the defendant had already made application therefor by a soldier's declaratory statement. Jacobus contested, and, after a trial and a decision in his favor by the officers of the land office, on appeal a decision was rendered by the commissioner of the general land office on April 29, 1892, adjudging Jacobus to have been an actual settler prior to said 23d day of February, and prior to the filing of *Hill's* soldier's declaratory statement, and therefore entitled under the law to make homestead entry. Upon those hearings the character of Jacobus's settlement and residence from about February 1st to the trial, May 11, 1891, was investigated and decided as a matter of fact. *Hill's* soldier's de-

McCord vs. Hill.

claratory statement was ordered canceled, and the register and receiver was directed to allow Jacobus to enter the land. Time for appeal from that decision having expired, *Hill's* declaratory statement was canceled, and on July 7, 1892, Jacobus's entry allowed. Up to 1891 the law allowed a homesteader, at any time before the expiration of the five years required for continuous residence, to make due proof of his entry, settlement, occupation, and improvement, and to commute his homestead entry into a cash entry by paying the government price of the land. This *Hill* did on the 20th of September, 1892, making proof of continued residence on the land for more than nineteen months, which proofs were received, and the receiver's receipt acknowledging payment of $400 delivered to him, entitling him, on presentation, to receive a patent from the commissioner of the general land office. In the month of December, 1892, Jacobus sold the land outright to the plaintiff and one McLeod.

Subsequent to Jacobus's settlement on the land, about February 1, 1891, but prior to his entry on July 7, 1892, and to his attempted final proof, September 20, 1892, there had been enacted a law of March 3, 1891, providing, as a condition for commutation, that the proof must show residence and cultivation of the land for a period of fourteen months from the date of the *entry*. This act had not come to the notice either of Jacobus or of the officers of the local land office, but on the 15th day of May, 1893, the commissioner of the general land office entered an order *ex parte* holding Jacobus's proofs of September 20, 1892, premature and insufficient, because only about two months had then elapsed from the date of his entry, and required that he then furnish supplemental proof, showing residence and cultivation for the fourteen-months period subsequent to July 6, 1892, which, of course, could not be done, no matter how complete the residence, until September, 1893. On receipt of this information, Jacobus consulted attorneys, and was ad-

vised by them to have a reconveyance made to him from *Mc-Cord* and McLeod, and to resume his residence on the land, in order to be able to comply with the requirement of the land department. Such reconveyance was made on the 1st of September, 1893, and followed by a mortgage from Jacobus to *McCord* and McLeod for the amount of the purchase price which they had paid to him, and on or about September 20, 1893, supplemental final proofs were offered. Thereupon, and about September 30, 1893, the defendant, *Hill*, in the language of the complaint,

"filed in the general land office certain affidavits setting up and claiming that said Jacobus did not settle upon or enter said land in good faith for the purpose of making it his home, but for the purpose of speculation, and that after he had made final proof and commuted his homestead filing he sold the timber and the land, and had afterwards abandoned the land, and had abandoned the land for over six months prior to the date of said affidavits, to wit, September 30, 1893, and also filed with said affidavits the said deed from Jacobus and wife to said *McCord* and McLeod, and the said quitclaim deed from said *McCord* and McLeod to said Jacobus, and the said mortgage from said Jacobus to said *McCord* and McLeod, as hereinbefore stated. Thereupon, and on the 19th day of December, 1893, in accordance with a letter of the commissioner of the general land office of the 18th of November, 1893, a hearing was had on April 20, 1894, upon the questions raised by the contest and affidavits submitted by the said *Hill*, and said hearing having been had before the receiver and register at Ashland, Wisconsin, the contestant, *Hill*, appearing in person and by his attorney, and the said Jacobus by N. B. Wharton & Sons, his attorneys. Upon said hearing the contestant called witnesses, and also was himself produced as a witness. None of such witnesses gave any testimony whatever except as to the possession, occupation, and improvement of said land by the said Jacobus and his family. No proof was given on the part of any of said witnesses or the said defendant upon said hearing in any way tending to impeach the good faith of the entry of said Jacobus, all of said testimony relating to the question whether said Jacobus had actually resided upon said land. The said Jacobus called numerous wit-

nesses upon said hearing. All of the said testimony related entirely and exclusively to the character of the possession, occupation, and improvement of the said Jacobus upon said land, except the testimony of said Jacobus,"

which was to the effect that the continuation of residence after the conveyance to McLeod was in order to protect, as far as he was able, the title which he had in good faith sold. The complaint then continues:

" The plaintiff shows to the court that no evidence was given tending in any way possible to show that the said Jacobus, prior to his sale of said land to said *McCord* and McLeod, had any contract with them, or either of them, or with any other person or persons, to sell the said land, or tending in any way to show that he had made any contract or agreement that the title which he expected to acquire should inure to the benefit of any other person or persons except himself. No evidence was given that he had ever seen or known the said *McCord* or McLeod prior to about the time of his conveyance to them, and not the slightest evidence was given in any respect tending to impeach the good faith of his said entry."

After hearing upon this contest, the register and receiver made his decision on August 9, 1894, of which the material part is as follows:

" On October 6, 1893, *Hill* filed an application to contest Jacobus on the ground that the entryman never settled on the land in good faith, but for the purpose of speculation; that he did not reside on the land during the six months next preceding the making of his final proof, and that he had sold the land to one *W. E. McCord.*

"Letter H, of November 18, 1893, directed this office to order a hearing on the charges.

"The two questions to be passed upon are:

"(1) Did Jacobus abandon the land?

"(2) Was the sale of the land to *McCord* and McLeod a bar to the offering of supplemental proof?

" Upon the first point the testimony of the witnesses is extremely conflicting. It is admitted by Jacobus that he worked at his trade in Superior and Iron River most of the time during his occupancy of the land, but it seems also fairly well established by the testimony of Mrs. Jacobus and numerous

other witnesses that her residence was upon the land, barring certain absences on account of sickness and visits. Their cabin and its housekeeping equipment were superior to those of most homesteaders, and the clearing, in extent and cultivation, compared favorably with that of others in the same neighborhood. After learning that supplemental proof would probably be required, Mrs. Jacobus returned to the land in February, 1893, where she remained about a week, when she returned to Iron River and remained for some weeks while being treated for rheumatism. She made a brief visit to the cabin in March, went there again in the latter part of May, remaining two weeks, and returned for the same length of time in July. This was apparently her last stay upon the land until after supplemental proof was offered, September 20th. A small crop of vegetables and hay was raised that season, as in the two years before.

"Upon the whole, the residence of Jacobus upon the land was fairly satisfactory until after the offering of his first proof, but it is clear that his subsequent residence was for the sole purpose of enabling him to make proof in order to secure title for his transferees.

"In December, 1892, about three months after making his premature proof, Jacobus sold the land to *McCord* and McLeod for a stated consideration of $4,250. September 1, 1893, the grantees named in the first instrument executed a quitclaim deed to same land and to Jacobus, the expressed consideration being $4,300. September 12, 1893, the day of making supplemental proof, Jacobus and wife executed a mortgage upon the land in favor of *McCord* and McLeod to secure a note for the amount of the stated consideration in the quitclaim deed from *McCord* and McLeod to Jacobus.

"The bare statement of facts points to the conclusion that the sale of the land in December, 1892, was absolute, and that the subsequent residence of Jacobus upon the land was as the agent of the transferees, and for the purpose of acquiring title for them. This conclusion is strongly supported by the admissions of Jacobus upon cross-examination. Jacobus, by the deed executed in December, 1892, divested himself of all right and title to the land. Granting, therefore, that the reconveyance September 1, 1893, was made in good faith by all the parties, the slender residence by his wife, during the spring and summer of 1893, was not upon the homestead of Jacobus, but upon land in which he

McCord vs. Hill.

had no claim or interest, and the residence, such as it was, could not avail him in making supplemental proof. But we think all the circumstances — the time at which the conveyance from *McCord* and McLeod to Jacobus was made, the execution of the mortgage, and the evidence of Jacobus himself — show that the land was not reconveyed to Jacobus in good faith, but for the sole purpose of enabling him to make supplemental proof for the benefit of his grantees. We are of the opinion, therefore, that Jacobus's supplemental proof cannot be sustained, and that the entry should be canceled, and a preference right of entry awarded the contestant, *Hill*."

On appeal therefrom by Jacobus, the following decision was rendered by the commissioner of the general land office:

"*Register and Receiver, Ashland, Wis.*

"Sir.— On October 6, 1893, plaintiff filed contest affidavit, alleging that said Jacobus did not settle upon or enter said land in good faith to make it his home, but for the purpose of speculation; that on September 20, 1892, defendant made final proof and commuted, and within a short time sold the timber and the land, and wholly abandoned it; that he did not reside on the land during the six months next preceding the making of his final proof, but instead lived at Iron River; that defendant testified falsely in making his final proof.

"Hearing was ordered by office letter H, of November 18, 1893, and was had with both parties present.

"August 9, 1894, you found for the plaintiff, and recommended the cancellation of the entry.

"September 5, 1894, the defendant appealed, assigning several grounds of error.

"It appears from the records that on September 20, 1892, defendant was permitted to commute his homestead entry to cash entry No. 5,534.

"By letter C, of May 15, 1893, you were directed to require Jacobus to furnish supplemental proof, as said . . . commutation was premature.

"It is shown by the evidence that defendant had a small log house on the land; that it was well finished and well furnished; that he had about two acres cleared; that the improvements were worth about $200. He did not have any stock of any description,— no chickens or other poultry; that on December 27, 1892, defendant sold said land to David McLeod and *W. E. McCord* for $4,250 cash.

McCord vs. Hill.

"On the question of residence, the testimony is very con-flicting. Defendant's wife stayed on the land a part of the time, and defendant worked in his barber shop in the town of Iron River, and stayed there nearly all the time, working at his trade. He made occasional visits to the land on the Sabbath day. It also appears that defendant rented three rooms in Iron River after he had sold the land, and he, with his wife, moved into them; that after defendant learned that he was required to furnish supplemental proof, because his commutation was premature, his wife moved back to the land, but defendant still remained in Iron River, making occasional visits to the land on the Sabbath and returning the same day. In reply to the question, 'Why was it that after you had made proof on the land, and you believed the proof to be good, and you had sold the land, that you still continued your residence on it?' he answered: 'For the reason, as I stated, that I sold this land, and, if there was such a thing, . . . I wasn't going to.let the men that bought it from me be loser by it. I was going to make him all right. It wouldn't be much longer anyway,— only five or six months,— and we might do it, and we wouldn't lose any-thing by it. We had nothing to lose, and he had used us well, so I thought we ought to do it. . . . That was the reason and the only reason.' Plaintiff further testified that the land was reconveyed to him for the purpose of enabling him to make the proof; that it was to enable him to acquire title to it.

"In the case of *Cann v. Cannon*, 4.Land Dec. Dep. Int. 322, it was held that, 'after the submission of final proof and a hearing had thereon, additional time to show compliance with the law, though within the life of the filing, will not be granted in the presence of an adverse claim, and where bad faith is evident.'

"The *Case of Laird*, 9 Land Dec. Dep. Int. 527, is very sim-ilar to the one at bar. In that case it was held that 'one who enters with no intention of establishing residence in good faith, and subsequently submits fraudulent final proof, cannot cure the wrong and acquire title to the land by re-turning to the same after said proof has been rejected and his entry held for cancellation.'

"In the *Case of Dougherty*, 10 Land Dec. Dep. Int. 79, the request of counsel for entryman to make a new entry was denied for the reason that he cannot make a homestead

McCord vs. Hill.

entry for the benefit of another, for the entry must be for his own exclusive use and benefit.

"The sale and conveyance of the land is clearly proven, and it is also as clearly shown that the land was reconveyed to defendant so that he could submit his final supplemental proof for the benefit of McLeod and *McCord;* hence your opinion is affirmed, and defendant's homestead entry, and his cash entry for the land involved, is held for cancellation. You will so notify the parties in interest, and defendant of his right of appeal.     Respectfully,

"Edw. A. Bowers,
"Asst. Commissioner."

Upon appeal to the secretary of the interior, and on the 28th day of April, 1896, the said secretary affirmed the said decision of the assistant commissioner, and confirmed his finding of facts.

The complaint then alleges the passage of the act of June 3, 1896, which, so far as material, is as follows:

"That whenever it shall appear to the commissioner of the general land office that an error has heretofore been made by the officers of any local land office in receiving premature commutation proofs under the homestead laws, and that there was no fraud practiced by the entryman in making such proofs, and final payment has been made and a final certificate of entry has been issued to the entryman, and that there are no adverse claimants to the land described in the certificates of entry whose rights originated prior to making such final proofs, and that no other reason why the title should not vest in the entryman exists except that the commutation was made less than fourteen months from the date of the homestead settlement, and that there was at least six months' actual residence in good faith by the home-stead entryman prior to such commutation, such certificates of entry shall be in all things confirmed to the entryman, his heirs and legal representatives, as of the date of such final certificate of entry, and a patent issue thereon; and the title so patented shall inure to the benefit of any grantee or transferee in good faith of such entryman subsequent to the date of such final certificate; *provided*, that this act shall not apply to commutation or homestead entries on which final certificates have been issued, and which have hereto-

McCord vs. Hill.

fore been canceled when the lands made vacant by such cancellation have been re-entered by the homestead act.

"Sec. 2. That all commutations of homestead entries shall be allowed after the expiration of fourteen months from date of settlement."

The complaint then proceeds to allege that, at the time of the passage of said act, Jacobus's final certificate had not been canceled, nor the land become vacant, nor been re-entered by any one, but that his final certificate of September 20, 1892, was then outstanding; that after the adoption of said act of Congress of June 3, 1896, and about July 1, 1896, Jacobus made motion before the secretary of the interior for a review of his decision of April 28, 1896, affirming the decision of the assistant commissioner of January 23, 1895, and for confirmation of his entry, on the ground that said Jacobus was fully within the act of Congress of June 3, 1896; that upon said motion the secretary, by mistake of law, erroneously decided that Jacobus was not within the act of June 3, 1896, for the reasons set forth in the decision of the assistant commissioner of January 23, 1895; that the secretary, by mistake and erroneously, held and decided that, because Jacobus was unable to make supplemental proof after his commutation proofs had been made, he was thereby excluded from the provisions of the act of Congress; that on the contrary it is the true intent and meaning of said act to allow commutation entries provided the claimant was entitled to make the same at the time of submitting his commutation final proofs, which were afterwards held by the department to be premature, and that said act in no manner depends upon facts occurring after the submission of commutation proofs in any case;

"that it was never held by any of the officers of the general land office or the local land office, or of the department of the interior, in any of said proceedings, that the said Jacobus was not an entryman in good faith of the said land, or that there was any defect or fraud whatever in his entry of said land or in his final or commutation proof thereof,

but the only fact which was ever held against the said Ja-
cobus in said proceedings was that, by reason of having
conveyed said land after he had obtained said final certifi-
cates to the plaintiff and said McLeod, he was therefore
precluded from making supplemental proof as required by
the commissioner of the general land office, which supple-
mental proof became immaterial and unnecessary, under
the act of June 3, 1896; that the said office decision of Jan-
uary 23, 1895, did not find any fraud or lack of good faith
on the part of said Jacobus, but simply found and held that,
because he had sold the land after receiving his final certifi-
cates, he could not make supplemental proof, and the plaint-
iff submits that the decision of January 23, 1895, was cor-
rect, inasmuch as the said Jacobus did not then own the
land, and, if the title of said Jacobus depended entirely
upon his ability to make such supplemental proof, he or
his grantees could never have obtained a patent of said
land, but inasmuch as it was found and determined by the
land department, through all the stages of said proceedings,
that he was an entryman in good faith, that his entry was
entirely satisfactory down to the time of making final proofs,
he was therefore brought clearly within the act of June 3,
1896, and the secretary of the interior, by error of law, im-
properly and unlawfully excluded him from the benefits of
that act."

The said decision of the secretary of August 4, 1896, is in
the words and figures following, to wit:

" *The Commissioner of the General Land Office.*

"Sir: Phillip W. Jacobus, through his attorneys, has filed
a motion for review of departmental decision of April 28,
1896, wherein is affirmed the action of your office in hold-
ing for cancellation his homestead and cash entries for the
N. W. ¼ of sec. 17, T. 48 N., R. 8 W., Ashland land district,
Wisconsin; also a motion to confirm said entries under the
provisions of the act of Congress approved June 3, 1896.
The applicant, in his motion for review, alleges that his case
is in all respects similar to that of Herbert H. Augusta (on
review, 21 L. D. 200), wherein it was held that a commuted
homestead entry may be equitably confirmed if, after its
allowance, the land was sold to a purchaser in good faith,
and fourteen months' residence was thereby rendered im-
possible.

"The very essence of the decision confirming the entry in that case, however, was the evidence of good faith on the part of the entryman. The evidence in the case at bar clearly shows that the entry was not made in good faith, and the proof submitted by the entryman was fraudulent, as fully set out in your office decision of January 23, 1895.

"It is likewise impossible to confirm the entry under the provisions of the act of June 3, 1896, for the same reason, namely, the practice of fraud in making proofs.

"Both the motion for review and the motion to confirm are accordingly denied. The papers in the case are herewith returned.　　　Very respectfully,
　　　　　　　　　"Hoke Smith,
　　　　　　　　　　"Secretary."

The complaint then alleges entry by *Hill* on September 7, 1896, and issue of patent to him, reconveyance by Jacobus to *McCord* and McLeod on October 31, 1896, and quitclaim by McLeod to *McCord*.

As a separate ground of recovery, the complaint also alleges that after the issue of the receiver's receipt to Jacobus, in September, 1892, to wit, in or about December, 1892, the plaintiff and McLeod, being then in negotiation for the purchase of the land from Jacobus, had an interview with the defendant, *Hill*, in which the latter stated to them that he did not have and would not make any claim to the said land; that he had been fairly beaten in his contest with Jacobus, and that, if the plaintiff and the said McLeod would buy the land, he would make no claim to it; that plaintiff and McLeod relied on such statements, and made the purchase from Jacobus for $4,250, which was actually paid; that thereafter, and about January 4, 1893, for the purpose of putting the understanding between the plaintiff and said *Hill* in writing, the parties entered into the following written agreement:

"For the purpose of making a settlement with *John F. Hill*, and his relinquishment on the N. W. ¼ of section 17, town 48, range 8 W., we hereby make him a present of a certain lot of logs, now skidded on said land, and give him

McCord vs. Hill.

permission till the 1st day of May, 1893, in which to enter on said land to remove said logs, and to occupy the house on said land, and to remain on said land until that date, but not thereafter.   Said logs amount to about 30,000 feet, and he agrees not to cut, nor allow any of his men to cut or destroy, any other timber.   And, in consideration of said logs, I, *John F. Hill*, being duly sworn, on oath says that he is the man that made a soldier's application for said N. W. $\frac{1}{4}$ of 17–48–8 W., and I make this affidavit for the purpose of relinquishing all my right, title, and interest in and to said claim, which I do unto the United States.   Signed, sealed, .and delivered and agreed upon this 4th day of January, 1893.

"In presence of                    DANIEL MCLEOD
 "W. H. PACKARD            W. E. MCCORD [Seal]
 "TRACY LYON                  JOHN F. HILL   [Seal]."

Upon this foundation it is claimed that *Hill* is estopped from now claiming or holding the land against the plaintiff.

From an order sustaining a general demurrer to the complaint, the plaintiff appeals.

For the appellant there was a brief by *Sanborn, Luse & Ellis*, attorneys, and *Lyman T. Powell*, of counsel, a brief in reply by *Sanborn, Luse, Powell & Ellis*, and oral argument by *L. K. Luse*.

*A. B. Ross*, for the respondent.

The following opinion was filed October 30, 1900:

DODGE, J.   1. The general rules of law governing the controversy here presented are well settled, and not seriously controverted.   They may be summarized as follows: The United States land laws, as between individuals, are deemed to be largely self-executing.   If those laws confer a right to the land upon the existence of certain facts, then that right arises when the facts are found to exist by the proper officers of the government.   The ascertainment of the facts upon which the land laws are to act is vested in the executive branch of the government, and in that particular department presided over by the secretary of the interior, and under him by the commissioner of the general land office.

When such facts are ascertained and decided by the executive officers, the rights of the parties are those conferred by the law. If, therefore, the secretary of the interior issue to one person a patent, when upon the facts decided by him another party is entitled to the land, ultimate rights will not be changed thereby, but the holder of the patent will by the courts be considered to hold in trust for him to whom the land in equity belongs. *Moore v. Robbins,* 96 U. S. 530; *Marquez v. Frisbie,* 101 U. S. 473, 476; *Lee v. Johnson,* 116 U. S. 48; *Sanford v. Sanford,* 139 U. S. 642; *Stewart v. Mc-Harry,* 159 U. S. 643; *Parsons v. Venzke,* 164 U. S. 89; *Hawley v. Diller,* 178 U. S. 476.

In this case it is claimed that, upon the facts found and decided to exist by the executive officers, Jacobus became, by virtue of the act of June 3, 1896, vested with the right to the land,— complete equitable ownership thereof; that the refusal of the secretary of the interior to recognize this right, and his decision permitting the defendant, *Hill,* to enter upon the land, and awarding him a patent therefor, were mere mistakes of law, and ineffectual save to confer ostensible legal title upon *Hill,* which can rise no higher than that which the government then had, namely, a naked legal title in trust for Jacobus, the true owner, or his assigns. *Wis. Cent. R. Co. v. Price Co.* 133 U. S. 496, 506.

The question before us on this complaint is whether it appears clearly, and without substantial doubt, that the facts entitling Jacobus to the land not only existed, but were decided to exist by the executive officers, and that the action of the secretary was predicated, not upon a decision of facts adverse to that claimant, but upon a misapplication or mistake of law to the facts already decided to exist. It is claimed that the complaint shows, by facts specifically alleged and by the unavoidable construction of the various executive decisions contained therein, that up to June 3, 1896, it had been decided that Jacobus had duly entered the land; had

prior to September 20, 1892, resided thereon, in compliance with the homestead laws, for a period of more than fourteen months; and had made an honest proof of such settlement, residence, and entry, paid his money on commutation, and received the receiver's certificate therefor, constituting full paper evidence of complete equitable title; that the local land officer's findings of these facts were in no wise challenged, but impliedly confirmed, by the commissioner's *ex parte* order of May 15, 1893, which pointed out that, conceding such facts to be true, still, by reason of a law of which neither Jacobus nor the land officers had actual knowledge, it had been made necessary that there should have been fourteen months of residence after the *entry*, as distinguished from the settlement, whereas his residence, as appeared on the face of the papers, with no attempt at concealment, had only been a little over two months after such entry, whereby it resulted that the reception of the proofs and the issue of the receiver's receipt had been premature by nearly one year.

It is inferable, of course, from the act of June 3, 1896, that there were other cases of this sort; for that act was general, and undertook to provide that they who had duly entered and occupied the land, whose proof, if not characterized by any fraud, had been duly received in disregard of the act of 1891, and the only defect in which was its prematureness, should be the owners of the land, provided their entries had not prior to the act been canceled and no one else had entered. Clearly, if Jacobus had done nothing after making his proofs in September, 1892, and his entry had remained without formal cancellation, he would have been entitled to confirmation thereof, and to his patent, upon the passage of this enactment. He did, however, take further steps, and attempted in September, 1893, when fourteen months from his entry in July, 1892, had elapsed, to prove residence in good faith for his own benefit up to

McCord vs. Hill.

that date, as the then existing law required.  In this he could not but fail, for, relying on his supposed complete title, he had sold the land and abandoned his residence upon it.  This fact was concealed in the affidavits whereby he attempted to make his later proofs, and on trial those proofs were held to be fraudulent, and he refused the land, although the final cancellation of his entry and certificate had not then taken place.

Following the act of 1896, and by reason of it, Jacobus made application for confirmation of his certificate of entry made in 1892, which it was claimed satisfied all the conditions of this act; thus practically ignoring the subsequent steps.  The secretary of the interior denied that application by reason of "the practice of fraud in making proofs." It is conceded by the appellant, on the one hand, that if, upon any evidence, the secretary found fraud to exist as a fact in the premature proofs made in September, 1892, then his decision is final, and he was justified in refusing Jacobus his patent, under the act of 1896.  But if he intended only to decide that fraud had been practiced in the proofs presented in September, 1893, then he made a mistake of law; for the reason that the good faith of such subsequent attempt to make proofs was not essential to Jacobus's right to a confirmation of his certificate of entry and to a patent under the act of June 3, 1896, such proofs being immaterial to that right.  The question is therefore reduced to the somewhat simple one of the construction of Secretary Smith's ruling of August 4, 1896.  It must not be forgotten, in approaching that question, that this one order was made upon two motions,— one was the motion to review his previous decision made April 28th, confirming the action of the commissioner of the general land office in denying Jacobus the privilege of making proofs in 1893.  That was overruled, as the secretary states, for the reason "that the entry was not made in good faith, and the proof submitted by the

McCord vs. Hill.

entryman was fraudulent, *as fully set forth in your office decision of January 23, 1895.*"   Of course that decision related to the proof which was before the secretary for consideration, and not to a previous proof, held of no avail because tendered and received before the land officers had any right to receive it as the law then existed.

We have carefully examined all of the preliminary proceedings and controversies, as set forth in the complaint, and are constrained to the conclusion that the proofs, and only proofs, referred to by the secretary in this order as permeated by the practice of fraud, were the same proofs which the commissioner had found fraudulent, and the secretary as well, in affirming the commissioner's decision. It is hardly necessary in this opinion to go over the whole of this ground.   The principal considerations are, however, that, up to the time of the motion on which this order of August 4th passed, no question had been presented, litigated, or discussed as to fraud in any proofs save those which were tendered in September, 1893, and it sufficiently appears from the complaint that the action of the secretary, both that of April 28, 1896, and August 4, 1896, was predicated on the record which had come to him from the district land officers through the commissioner for review.   It must be remembered that the officers of the land department — either the local land officers, or the commissioner, or both — had already decided, first; that the settlement and residence up to the time of the entry, namely, from February 1, 1891, to July 6, 1892, were *bona fide* and satisfactory; again, in September, 1892, that such residence as the law required had continued, and that the entry, the proofs, and the application for commutation to a pre-emption entry at that time were *bona fide*.   This conclusion, upon facts reached by the land officers, was in no wise impugned by the order of the commissioner made in May, 1893, to the effect that such proofs could not be considered, for that the new law

had required a residence of fourteen months after the entry, which time had not elapsed. Then came in September, 1893, the attempt to offer proof of continuous residence by Jacobus as a homesteader up to that time,— that is, through the year from September, 1892, to September, 1893,— when confessedly during that year Jacobus had sold out and gone off the premises, and when it was conceded that his attempt to resume occupation thereof under the guise of a return to him of the title was not with a view to making a homestead for himself, but for the purpose of protecting the title of his grantee,— a purpose meritorious enough *inter partes*, but fraudulent as to the government. Here came the protest by *Hill*, which attacked the good faith of Jacobus's entry and alleged the facts with reference to abandonment, conveyance, removal, and reconveyance. No suggestion in this protest was made that the original proofs offered and accepted in September, 1892, were characterized by any fraud or fraudulent practice, and no issue as to the *bona fides* of Jacobus in tendering those proofs was presented. Now, while it is doubtless within the power of the commissioner of the general land office and of the secretary of the interior to extend their examinations beyond the issues which may be formed by a protest, it is said in *Lee v. Johnson*, 116 U. S. 48, that such practice is not common, and we think it clearly appears from the context and language of the decisions of the local land officers, the commissioner, and the secretary that no such extension was made in this case. From the record set forth, it appears that the local officers persisted in the conclusion already reached by them,— that the residence of Jacobus, up to the time of allowance of his first proofs, was satisfactory. They, however, point out the acts subsequent to that time, which clearly established the fraudulent character of the proofs of September, 1893, from the government's point of view, and recommend cancellation of the whole proceeding by reason of that fraud. This is the

McCord vs. Hill.

view which it seems to us the commissioner of the general land office adopted. In the light of the record on which he was passing, the language is adaptable to that view and to no other, and the fraud in the proofs then tendered and under consideration for acceptance was an abundant reason for refusing them, and thereby, as the law then stood, justified final action invalidating Jacobus's claim to the land *ab initio*. Had that conclusion been carried into effective judgment by a cancellation of his entry, it would have been justified, would have been final, and he would have been entitled to no relief under the act of June 3, 1896. The ultimate rendition of judgment, however, had been postponed so that his rights were still unadjudicated, though decided, when the act of 1896 came in and declared that they should be adjudicated upon the proof made in September, 1892, unless in making *such* proof fraud had been practiced.

It is therefore entirely clear that the proofs first mentioned in the secretary's order of August 4, 1896, as those which had been held fraudulent in the commissioner's decision, brought up and already affirmed on appeal, were the proofs of September, 1893, and the mere reading of the order leaves us in no doubt that he referred to and intended the same proofs in the latter part of the same order. Certainly no one could pass from consideration of the last proofs, affected, as they were, by events and acts peculiar to themselves, to those of the year before, which, if fraudulent, must have been so found upon wholly different reasoning, without noting in his order the very marked distinction and antithesis which must have been present to his mind. It is inconceivable that the secretary, after brusquely reaffirming the former decisions of his subordinates as to the 1893 proofs, should turn to those of 1892, and *reverse* the holding of the same subordinates thereon, in such phraseology as that used by him. Whether the secretary overlooked the fact that there were two sets of proofs, and assumed that Jacobus's

claim to confirmation and patent, under the act of June 3, 1896, was dependent on the *bona fides* of the same proofs as was his application for confirmation and patent previously considered, or whether, having the situation correctly in mind, he decided, as matter of law, that fraud in the 1893 proofs would preclude him from the benefit of his 1892 proofs under the new law, is perhaps not certain. Either mental attitude is such mistake as precludes the idea that he passed on the question of fraud in the proofs of September, 1892, as a fact, and such a mistake as can be reviewed and corrected by the courts. We reach the conclusion, therefore, that the complaint with sufficient certainty shows that Jacobus was denied his patent because of fraud in a transaction which under the law could have no effect upon his right thereto; that, as a result, the issue of patent to *Hill* conveyed only the title which the United States then had, namely, a bare legal title in trust for Jacobus, in whom the act of June 3, 1896, had vested full equitable title; and that the complaint states a cause of action to charge *Hill* with such trust in favor of plaintiff.

The respondent urges strenuously that the allegations of the complaint that no evidence was offered tending in any way to impeach the good faith of the entry of Jacobus, or tending in any way to show any purpose on his part to make the sale which, after the issue of his final certificate, he did make, are merely conclusions, and cannot suffice to render it sufficiently certain that evidence on that subject was not presented and considered, and that it is the duty of the plaintiff to set out all of the evidence in order that the court can draw its conclusions instead of accepting those of the pleader. This contention imposes too strict a rule for pleadings. Doubtless no judgment can go repudiating the conclusion reached by the executive department of the United States without full and clear proof of their mistake of law, but, under our statute, the complaint shall consist

of "a plain and concise statement of the facts constituting the cause of action" (sec. 2646, Stats. 1898), and is to be liberally construed (sec. 2668). Under these provisions, it is sufficient for plaintiff to allege as a fact the absence of any testimony or proofs on a given subject, which allegation we think must be accorded literal effect upon demurrer, leaving the plaintiff to make proof thereof according to the ordinary rules of evidence.

2. The plaintiff makes further contention that certain representations and agreements on the part of *Hill* estop him from making any claim of title under his patent from the United States. In view of the grounds upon which we have reached it, the foregoing conclusion as to the force of the action of the interior department seems to us conclusive against this contention. We have held that the refusal of title to Jacobus was based entirely on facts occurring subsequent to *Hill's* representations, those facts being: Jacobus's conveyance of the premises to the plaintiff, his abandonment thereof, and his fraud upon the government in attempting to revest himself with title and to make affidavit that, after such conveyance, he continued to occupy for himself. *Hill*, at most, could only estop himself by declaration of existing facts, except so far as he may be said to have entered into a contract performance of which might be indirectly enforced by holding him estopped from breaking it or from claiming the fruits of its breach. The allegations of the complaint on this subject are well summarized in respondent's brief as follows: *Hill* stated to appellant, first, that he did not have any claim to the land; second, that he would not make any claim to the land; third, that he had been fairly beaten in his contest with Jacobus; fourth, that, if appellant bought the land from Jacobus, *Hill* would make no claim to it; and, fifth, relinquished all his claim to the land to the United States. Of course, any declaration made by *Hill* as to his then existing lack of title

to the land could not estop him from subsequently acquiring and insisting upon a new and independent title not then claimed by him, and not inconsistent with his declaration. 2 Pomeroy, Eq. Jur. § 813; *Bushnell v. Scott,* 21 Wis. 457. Whether his assertion that he had been fairly beaten in his contest with Jacobus would estop him from assailing the good faith of the latter's entry or commutation proof, which had already been made, it is immaterial to decide, in view of the conclusion reached that that question was not considered and had no weight in bringing about the reclamation of the land by the United States. If, when the evidence is fully in, it shall be found that such assault on *Hill's* part was effective, a different question may arise, but for the purposes of the present discussion we may drop that assertion from view. None of his other declarations or promises is inconsistent with the claim which *Hill* now makes. He may well concede that he then had no claim to the land, and that he would not assert any claim which he then had to it if the appellant purchased it, and that he did in fact relinquish to the United States all claim which he then had. His present title may nevertheless stand; for, as we have held to appear by the complaint, the United States took the land away from Jacobus, not because of any claim which *Hill* had, and not because of any facts which existed at the time of *Hill's* representation, but because of acts performed by Jacobus afterwards. *Hill's* present title is predicated, not upon any claim that he then had, but upon the fact that he, by his protest, brought to the attention of the United States Jacobus's subsequent conduct, and in consideration thereof was given the privilege to purchase the land from the United States as a new and independent transaction. The conduct of *Hill,* therefore, so far as stated in the complaint, cannot estop him from asserting the validity of the title acquired by his patent, if it should ultimately be held that Jacobus's rights were properly canceled and destroyed,

McCord vs. Hill.

unless, indeed, that were done upon the ground of facts existing at the time of the representations and denied thereby.

*By the Court.*— Order of the circuit court reversed, and cause remanded with directions to overrule the demurrer.

CASSODAY, C. J., and MARSHALL, J., took no part.

A motion by the respondent for a rehearing was submitted on the brief of *A. B. Ross*, attorney, and *W. F. Bailey*, of counsel, for the motion, and *Sanborn, Luse, Powell & Ellis, contra*.

The following opinion was filed February 1, 1901:

PER CURIAM. Motion for rehearing granted, provided, however, that reargument shall be confined to the following questions, viz.: First, whether, as conditions precedent to the confirmation of Jacobus's certificate of entry under the act of June 3, 1896, application to the commissioner of the general land office, proof of the necessary facts before him, and finding thereon by him, or either of those proceedings, was made essential; second, whether the six-months actual residence in good faith by the homestead entryman prior to the commutation, required by said act of June 3, 1896, was required to be subsequent to the date of entry; third, whether at the date of said act, June 3, 1896, Jacobus's entry had been canceled, and the land in question had been re-entered by the homestead act; fourth, whether the rights now claimed by the respondent are such that he is estopped to set them up against the appellant.

The cause was reargued September 26, 1901.

For the appellant there was a brief by *Sanborn, Luse & Powell*, and oral argument by *A. L. Sanborn* and *L. K. Luse*.

For the respondent there was a brief by *W. F. Bailey*, attorney, and *W. H. Stafford*, of counsel, and oral argument by *Mr. Bailey*.

The following opinion was filed October 15, 1901:

McCord vs. Hill.

Dodge, J. 1. The first question submitted for reargument, namely, whether, as conditions precedent to the confirmation under the act of June 3, 1896, of Jacobus's previous commuted pre-emption entry, there was necessary an application to the commissioner of the general land office and proof of the necessary facts before him and finding thereon by him, is predicated upon the first clause of the act of June 3, 1896, " Whenever it shall appear to the commissioner of the general land office that," etc. The doubt suggested by these words, as pressed upon us in the motion for rehearing, was whether the purpose of Congress was to create the commissioner of the general land office a special tribunal to pass upon the existence of the necessary facts for relieving certain applicants for public lands from the effect of the act of March 3, 1891, or whether it was intended merely to provide, *in pari materia* with the other land laws, for an examination and decision of these questions by the land department, presided over by the secretary of the interior, and in which the commissioner of the general land office and all other officers are but subordinates of the secretary of the interior, and exercising one or another of the functions of that department, subject to direction, control, and supervision by the secretary. It is well known that in 1820 Congress for the first time attempted something like general legislation which should affect and regulate the management and disposal of the then considerable public domain, which had been derived from various sources and was obviously to increase vastly in extent and value. Since then legislation has been almost as frequent as the sessions of Congress; some of it scientific and deliberate, but much of it seemingly accidental and aimed at special details. Many of these acts, if construed according to their exact words, would have been subversive of certain phases of the obvious general policy of Congress with reference to this important subject; and in this field, perhaps more than almost any other of con-

gressional legislation, the construction placed upon the land laws from time to time enacted both by the department and by the courts has been that they were intended merely to be added to and become a part of a consistent system of legislation, and as enacted one by one were, so far as possible, to fall under and be controlled by those general provisions and regulations evidently intended to cover the whole field. A comparatively late illustration of this view is presented in the case of *U. S. v. Healey*, 160 U. S. 136, but there are many others which might be cited.

Since the incorporation of the land department into the interior department, whereby the whole business of the former was placed under the supervision and control of the secretary of the interior, there has been no element of the policy of Congress and of the public land system more prominent than that the secretary of the department of the interior should be the responsible head thereof; that through and by him spoke and acted the government of the United States with reference to the public domain; and an act which substituted some subordinate of his as the responsible and final representative of the government, free and independent of the secretary's control, would be a most startling innovation. It is therefore not surprising that we find that the act of 1896 under discussion was promptly assumed by the interior department to be but one more of the many laws directing the conduct of the land department, to be controlled in its execution by the general policy above outlined, whereby the commissioner exercised no more absolute power or discretion than he did generally with reference to the conduct of the land business. On July 9, 1896,— about one month after the enactment of the law,— we find the commissioner, having first obtained the approval of the secretary, promulgating regulations for the execution of this act by a circular published in 26 Land Dec. Dep. Int. 544. This circular provided that in certain cases then pending no

McCord vs. Hill.

application to any officers need be made, but that the general land office would at once take them up for consideration without application.   As to other cases it was provided that application should be made, not to the commissioner as a responsible and special tribunal, but, as in the case of all other land matters, to the local land officers, who should examine and report thereon, as upon other applications, not to the commissioner, but to the general land office.   This circular, while emanating from the commissioner of the general land office, did not purport to emanate from him as the source of authority, but, in accordance with the usual practice of the land department, bore upon its face the sanction of the approval of the secretary.  It was wholly inconsistent with the understanding that the establishment of rights under the act of 1896 was intended to be treated otherwise than the rights of other applicants under the general system of public land laws.   Two instances are cited to us by counsel of the treatment of applications under this law in exactly the same manner as other applications for land, in that the power of the secretary of the interior to supervise, regulate, and control is recognized and exercised.  *In re Hasselquist,* 24 Land Dec. Dep. Int. 351; *Kuepper v. Tripp,* 26 id. 561. To these may be added Jacobus's own application, over which the secretary unhesitatingly took jurisdiction without a thought that a new tribunal exclusive of himself had been vested with that authority.   We find nothing to indicate that the line of construction thus adopted in the department has ever been varied, and these decisions, commencing at about the time of the passage of the act, and continuing thereafter, are, of course, very cogent in its construction. *U. S. v. Healey,* 160 U. S. 136.

In the case of *Buena Vista Co. v. I. F. & S. C. R. Co.* 112 U. S. 165, an act of Congress provided "that the commissioner of the general land office is hereby authorized and required to receive and examine the selections of swamp

McCord vs. Hill.

lands, . . . and allow or disallow said selections and indemnity provided for," etc. A decision by him under such act was reversed by the secretary of the interior, and in the suit it was contended — as by the respondent here — that the decision of the commissioner was intended to be final and not appealable to the secretary. This contention was overruled, the court saying:

" There is nothing in the act which alters the relation be-tween the two officers as otherwise established, or puts the decisions of the commissioner under that act upon a footing different from his other decisions."

In *Knight v. U. S. L. Asso.* 142 U. S. 161, the question of the relation of the secretary to the execution of the land laws — not only those existing at the time his general authority was defined, but such as might be thereafter enacted — was exhaustively discussed by LAMAR, J., who shortly before had been secretary of the interior. This dis-cussion is so exhaustive, and the citation of statutes, prece-dents, and illustrations so complete, as to render further en-largement now unnecessary. The views there expressed are further supported by *Orchard v. Alexander*, 157 U. S. 372; *Parsons v. Venzke*, 164 U. S. 89; *Warner Valley S. Co. v. Smith*, 165 U. S. 28; *In re Sweayze*, 5 Land Dec. Dep. Int. 570; 17 Op. Att'ys Gen. 205.

In the light of the rules for construction of the land laws promulgated by these decisions of the supreme court of the United States and the practical construction given to the act of 1896 by the executive officers, we cannot doubt that it was intended to be carried out under the direction and supervision of the secretary of the interior. While he might, and generally did, require that rights claimed under it should first be submitted to the officers of the general land office, he did not thereby preclude himself from assuming direc-tion and supervision upon direct application to himself, waiving such preliminary steps. In such case his decision

McCord vs. Hill.

was the ultimate and final one of the executive branch of the government.

2. The second question submitted for argument was whether the words, "Whenever it shall be made to appear . . . that there was at least six months' actual residence in good faith by the homestead entryman prior to such confirmation," etc., required that such residence should be after the entry. Obviously, there is nothing in the words themselves to express such requirement, unless it lurks in the word "entryman." The suggested argument is that residence by an entryman can only exist after entry; before that claimant is not an entryman. This contention gives to that single word extraordinary force as a limitation, and we should be slow to believe that statute makers used it for that purpose, unless such intention were confirmed by context or other considerations. The word "entryman" may quite as naturally have been used merely to describe such person as was entitled to the benefit under the act of 1896. To be entitled to confirmation thereunder, one must have been a homestead entryman. We find the word thus used elsewhere in the same statute more than once; that is, as merely descriptive of the persons to whom that act applies. If used in the same sense in the clause under consideration, it would only require six months' residence by that person. That the same word is used in the same sense when repeated in a law is ordinarily to be presumed, unless a different purpose is plain. We can discover no reason, either in context or in the purpose of the legislation, to avert that presumption. On the contrary, we think that it is merely an adoption into this particular statute of a rule of the general land office which for many years had been applied to pre-emptors, whereby, in excess of the statutory conditions for acquiring title, they were required to have resided in good faith upon the land for at least six months before pre-emption certificate could issue. Since this requirement was

McCord vs. Hill.

not statutory, the act of 1896, giving to homestead entrymen the same rights to pre-emption prescribed *by law* for those originally applying as pre-emptors, might have been construed as waiving this requirement for six months' residence in good faith prescribed only by regulation. It seems obvious that the clause in question was interpolated merely to avoid this result, and to require of homestead entry, as a condition of commutation into pre-emption, the same six months' residence in good faith as the regulation had previously imposed on all others; which residence had never been required to be subsequent to entry, but merely prior to final proof.

Another reason is now urged by appellant why the clause making right to confirmation under the act of 1896 dependent on six months' actual residence should not exclude the plaintiff, even if such residence must be subsequent to entry. That reason is that, as appellant now claims, his entry took place when he filed the necessary papers and paid the fee in February, 1891. He cites authorities seeming to sustain the position that the date of an entry of land is when the applicant having the right to enter completes all of the acts required of him to effect that result; that delay of the land officers to note on their books such entry cannot affect his rights, whether such delay results from hearing and deciding a contest or from any other cause. *Chotard v. Pope,* 12 Wheat. 586; *Lytle v. Arkansas,* 9 How. 333; *Shepley v. Cowen,* 91 U. S. 330; *Postle v. Strickler,* 3 Land Dec. Dep. Int. 42; *Gilbert v. Spearing,* 4 id. 463; *Goodale v. Olney,* 12 id. 324; *Coder v. Lotridge,* id. 643; *Bomgardner v. Kittleman,* 17 id. 209; *McDonald v. Hartman,* 19 id. 562. Since we have decided that the six-months residence is not required to be subsequent to entry, we do not need to pass upon this contention of appellant. If we should adopt this view, it would not change the result. We therefore consider that we ought not to pass on it, for its decision might sustain plaintiff's

McCord vs. Hill.

right to the land independently of the acts of 1891 or 1896. In that respect it is an entirely new proposition, presented for the first time upon a rehearing limited by our order so as not to fairly include it, so that respondent cannot be said to have had reasonable opportunity to meet it. On the original argument of this case no question was raised as to the correctness of the commissioner's ruling that Jacobus's entry was of date July 6, 1892, and our consideration of the case proceeded upon assumption of such correctness. As the question was not raised or argued by counsel, so it was not considered or decided by the court. The several references in the former opinion to July 6, 1892, as the date of entry are to be construed, not as a decision of that fact, but merely as assumption of a premise from which the discussion of other questions proceeded.

3. The first part of the third question reargued we deem unnecessary of decision for the purposes of this case. Examination of various decisions of the land department of the United States and of federal courts leaves much confusion and doubt whether an order of the commissioner of the general land office that an entry be "held for cancellation" effectively cancels it if an appeal is taken therefrom, or whether its efficacy as a judgment of cancellation is complete only upon the expiration of the time for appeal without that right being exercised, or, if exercised, upon final affirmance by the secretary of the interior and communication thereof to the commissioner, followed by formal order of cancellation. There seem to be decisions and *dicta* supporting the different theories. *Johnson v. Walton,* 11 Land Dec. Dep. Int. 278; *McDonald v. Hartman,* 19 id. 547; *In re Northern Pacific R. Co.* 20 id. 191; *In re Hasselquist,* 24 id. 351; *Germania I. Co. v. James,* 89 Fed. Rep. 811; *S. C.* 107 Fed. Rep. 597. Since the effect of such acts must largely be ascertained by the holdings of the department; and ultimately by decision of federal courts, we deem it unadvisable to declare our view

McCord vs. Hill.

thereon unnecessarily. We therefore withdraw the statement in our former opinion bearing on completed cancellation, as follows: "The ultimate rendition of judgment, however, had been postponed so that his rights were still unadjudicated, though decided, when the act of 1896 came in and declared that they should be adjudicated upon the proof made in September, 1892, unless in making such proof fraud had been practiced." We say that completeness of cancellation of plaintiff's entry is immaterial and unnecessary of decision because his right to confirmation under the act of 1896 was by the terms of that act defeated only in case there had been both cancellation and re-entry under the homestead act prior to June 3, 1896, or prior to application for confirmation; and the complaint clearly asserts that no re-entry had taken place. It not only categorically and in terms negatives such event, but also alleges that *Hill's* entry did not take place until September 7, 1896. This would seem conclusive upon demurrer that this call of the statute had not been complied with, but counsel for respondent urges that *Hill* had acquired a "preference right of entry" at some earlier date, which should be deemed that of his re-entry. Careful examination of the complaint discloses no such allegation, but if we should infer from the fact that Jacobus's attempt to make second commutation was defeated upon *Hill's* contest, and that the latter afterwards entered, that such entry was allowed by reason of preference right based in his contest, still the existence of such preference right is not an entry nor a re-entry, within the words of the act of 1896. Such right is a mere privilege to enter, and in no sense an entry. Sec. 2, ch. 89, Laws of 1880 (21 Stats. at Large, 140); *In re Hendrickson*, 13 Land Dec. Dep. Int. 169; *In re Davis*, 19 id. 489. Hence we conclude that, whether cancellation had or had not taken place, there certainly had been no re-entry, and plaintiff was not within the terms of the proviso to the act of 1896, so as to preclude him from right to confirmation under it.

After full consideration of all the reasons urged, we find none to lead us to recede from the decision formerly declared. It is therefore unnecessary to consider whether, if any of such reasons had been sustained, estoppel might successfully be invoked against respondent in urging them.

*By the Court.*— Order of the circuit court reversed, and cause remanded with directions to overrule the demurrer.

Marshall, J., took no part.