## LEE *v.* JOHNSON.

ERROR TO THE CIRCUIT COURT OF EMMET COUNTY, STATE OF MICHIGAN.

Argued December 4, 1885.—Decided December 21, 1885.

One seeking in equity to have the holder of a patent of public land declared a trustee for his benefit on the ground that the patent was improperly issued, must clearly establish that there was a mistake or fraud in the issue of the patent, which affected the decision of the Land Office, and but for which he would be entitled to the patent.

In the absence of fraud, the findings of the Secretary of the Interior are conclusive upon questions of fact as to land claims submitted to him for his decision.

When it clearly appears in a proceeding that a claim set up is against public policy, and that in no event could it be sustained, the tribunal should dismiss it, whether the allegations of the parties have or have not raised the question.

The facts which make the case are stated in the opinion of the court.

*Mr. Henry E. Davis* for plaintiff in error.

*Mr. James Blair* for defendant in error, submitted on his brief.

MR. JUSTICE FIELD delivered the opinion of the court.

This case comes from the Circuit Court of Emmet County, Michigan. It was originally commenced in that court, where

a decree was rendered dismissing the suit. On appeal to the Supreme Court of the State the decree was reversed, and the Circuit Court directed to enter a decree, in favor of the plaintiff for the relief prayed in the bill of complaint. The Circuit Court having complied with the mandate of the Supreme Court by entering that decree, the defendant sued out the writ of error from this court to review it. The writ was directed to the judge of the Circuit Court because the final decree was entered and the record of the suit remained there. *Atherton* v. *Fowler*, 91 U. S. 143; *Gelston* v. *Hoyt*, 3 Wheat. 246.

The defendant in the court below, the plaintiff in error here, is the holder of a patent of the United States for a parcel of land in Michigan issued to him under the homestead laws, and the present suit was brought to charge him, as trustee of the property, and to compel a conveyance to the plaintiff. The patent having been issued by officers of the Land Department, to whose supervision and control are entrusted the various proceedings required for the alienation of the public lands, all reasonable presumptions are indulged in support of their action. It cannot be attacked collaterally, but only by a direct proceeding instituted by the government or by parties acting in its name and by its authority. If, however, those officers mistake the law applicable to the facts or misconstrue the statutes and issue a patent to one not entitled to it, the party wronged can resort to a court of equity to correct the mistake and compel the transfer of the legal title to him as the true owner. The court in such a case merely directs that to be done which those officers would have done if no error of law had been committed.

The court does not interfere with the title of a patentee when the alleged mistake relates to a matter of fact, concerning which those officers may have drawn wrong conclusions from the testimony. A judicial inquiry as to the correctness of such conclusions would encroach upon a jurisdiction which Congress has devolved exclusively upon the Department. It is only when fraud and imposition have prevented the unsuccessful party in a contest from fully presenting his case, or the officers from fully considering it, that a court will look into

the evidence.  It is not enough, however, that fraud and imposition have been practised upon the Department, or that false testimony or fraudulent documents have been presented; it must appear that they affected its determination, which, otherwise, would have been in favor of the plaintiff.  He must in all cases show that but for the error or fraud or imposition of which he complains, he would be entitled to the patent; it is not enough to show that it should not have been issued to the patentee.  It is for the party whose rights are alleged to have been disregarded that relief is sought, not for the government, which can file its own bill when it desires the cancellation of a patent unadvisedly or wrongfully issued.  *Bohall* v. *Dilla*, 114 U. S. 47; *Sparks* v. *Pierce*, 115 U. S. 408.

If now, we apply these doctrines, which have been settled by repeated decisions, the case before us will be readily disposed of.  The plaintiff below, Enos Johnson, on the 17th of April, 1875, entered the land in controversy, situated in Emmet County, Michigan, under the homestead laws.  Previously, and for many years, he had resided in Kent County, in that State, distant several miles from the land.  After the entry he resided upon the land only occasionally, offering as an excuse that the health of his wife required him to remain at "their home in Kent County."  At the outset he employed his son-in-law, Shaeffer, and family, to go upon the land and remain there in his employ until his wife's health should so improve as to admit of his leaving her or taking her with him in his personal settlement upon the land.  It would seem that afterwards some attempts were ostensibly made toward such a personal settlement, but they were at long intervals apart and for comparatively short periods.  During these attempts Shaeffer and his family remained on the land, cultivating and improving it.  More than a year after his entry Johnson, while living at the old home, voted in Kent County.  It appears, also, that in June, 1876, at one of the periods, as is alleged, during which Johnson resided with his wife on the land, Lee complained at the land office that Johnson had abandoned the land for more than six months prior to that date; that a contest was thereupon initiated between Johnson and Lee for the right to the

land; that the usual proceedings in such cases were had before the register, by whom testimony was taken and forwarded to the Commissioner of the General Land Office. The Commissioner decided in favor of Johnson, but, on appeal, the decision was reversed by the Secretary of the Interior, and the entry ordered to be cancelled. When the land was subject to a new entry, Lee entered it under the homestead laws, and subsequently availing himself of the privilege of commutation under the statute, paid the government price and obtained a patent, bearing date July 13, 1878.

Without going into any detail of the evidence presented to the Commissioner and the Secretary of the Interior, but taking the general statement of its nature, which we have given, it is clear that their attention was drawn by it to the character of the settlement of Johnson, and that they considered whether his entry was made to acquire a home for himself or for his son in-law, whether his residence had been sufficiently personal and continuous to save and perfect any right, if in fact he had ever initiated any, and whether or not he had abandoned the land. The findings of the Secretary upon any of these matters must be taken as conclusive, in the absence of any fraud and imposition such as we have mentioned. Upon this point it is only necessary to refer to the cases where this conclusive character of the action of the Department upon matters of fact cognizable by it, has been expressly affirmed. *Johnson* v. *Towsley*, 13 Wall. 72; *Shepley* v. *Cowan*, 91 U. S. 330, 340; *Moore* v. *Robbins*, 96 U. S. 530, 535; *Quinby* v. *Conlan*, 104 U. S. 420, 426; *Smelting Co.* v. *Kemp*, 104 U. S. 636, 640; *Steel* v. *Smelting Co.*, 106 U. S. 447, 450.

The Supreme Court of Michigan held the decision of the Secretary of the Interior inconclusive because it was not upon a point in issue between the contestants, stating that the question was that of abandonment, which only was inquired into by the register, or could be considered on appeal; that the jurisdiction of the Secretary, if he disposed of the case finally on other grounds, was not appellate but original, and that this had not been conferred; that the register on the hearing and the Commissioner on appeal had decided that the

plaintiff had not abandoned the land, and upon that ground there was no reversal of the decision. It, therefore, held that the plaintiff was entitled to the relief prayed.

While there are no formal pleadings in such cases, it is undoubtedly true, as a general rule, that in contested matters before the Land Department, as in those before the courts, the decision should be confined to the questions raised by the allegations of the respective parties; but this rule has its exceptions. If in any case it appears from the evidence that the claim of the complaining or moving party is against public policy or the law, so that in no event could he recover a final judgment or decision, whatever be the nature or extent of the testimony upon the point at issue, the tribunal should not hesitate to dismiss the suit or the proceeding. An illustration of this rule is found in *Oscanyan* v. *Arms Co.*, 103 U. S. 261. There a large sum was claimed from the vendor of firearms as commissions on sales that, through the influence of the plaintiff, had been made to the Turkish government, of which he was then an officer. The defendant pleaded the general issue; and it was contended that the illegality of the contract could not be noticed, because not affirmatively pleaded. But the court held that, assuming the contract to be a corrupt one, forbidden by morality and public policy, the objection to a recovery could not be obviated or waived by any system of pleading, or even by the express stipulation of the parties; that it was one which the court itself was bound to raise in the interest of the due administration of justice.   p. 268.

So, in the present case, the Secretary of the Interior came to the conclusion, from the evidence returned by the register, that Johnson must be considered not as a *bona fide* homestead claimant, acting in good faith, but as one seeking, by a seeming compliance with the forms of law, to obtain a tract of land for his son-in-law, who had previously exhausted his homestead privileges, observing that the element of good faith is the essential foundation of all valid claims under the homestead law. Under these circumstances, so far from having exceeded his jurisdiction in directing a cancellation of the entry, he was exercising only that just supervision which the law vests in him

over all proceedings instituted to acquire portions of the public lands. Upon the testimony the question of abandonment could be of no consequence, as no just right in Johnson's favor had been initiated. Upon an application for a rehearing, the Secretary reiterated his judgment, stating that he was unable, upon the testimony of Johnson himself, to arrive at the conclusion that he had complied with the provisions of the homestead law to an extent to entitle him to its benefits.

In the bill of complaint it is alleged that in the testimony reported by the register there was an interpolation to the effect that the plaintiff testified that he had intended the land as a homestead for his son-in-law, and not as a personal home for himself, and that while in Kent County, in the spring of 1876, he had voted at an election. His allegation that he gave no such testimony is contradicted, the answer averring that the testimony as reported was read over to him before he signed it, and was reported as signed. And in his examination in this case he admits, whilst denying that he testified as stated before the register, that he voted in Kent County a year after he had made his entry; and his direct testimony that he intended the land for Shaeffer could not be more persuasive of the fact than his conduct subsequent to the entry. To allow the conclusions of the Secretary of the Interior on questions of fact to be subjected to review by the courts in cases of this kind would open the door to endless litigation.

We are of opinion, therefore, that the Supreme Court of Michigan erred in its decision. The decree of that court will accordingly be

*Reversed, and the cause remanded to the Circuit Court, with directions to enter a decree in conformity with this opinion.*