JONAS H. COOK *et al.* v. EMMA D. McCORD *et al.*

(Filed Aug. 25, 1899.)

1. PUBLIC LAND—*Town Lot Claimant—Abandonment.* A town lot claimant who vacates a lot in obedience to an award made by a "Board of Arbitration" created under one of the provisional governments for the cities of Oklahoma in 1889, cannot be held by such action to have voluntarily abandoned his claim to said lot.

2. LAND DEPARTMENT—*Contest—Findings of Fact—Not Reviewed by Courts.* In matters passed upon by the land office; and which are open for review by the courts, the findings of fact made in the land department are final, and will not be reviewed in the courts, in the absence of fraud, imposition or mistake.

3. SAME—*Abandonment—Findings of Land Department Final, When.* The question as to whether or not a lot has been abandoned by the claimant, is a question of fact, and the findings of the proper officers of the land department are, in the absence of fraud, imposition or mistake, final upon that question.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*Cotteral & Hornor,* for plaintiffs in error.

*John F. Stone,* for defendant in error, Emma D. McCord.

STATEMENT OF THE CASE.

This is an action brought by Emma D. McCord against Jonas H. Cook and another, in which the plaintiff avers that Cook received a deed from the townsite board for the City of Guthrie, for lot 40, block 55, in said city, and judgment was sought to declare Cook and those claim-

ing under him to be trustees, holding the legal title to the premises in trust for, and for the conveyance of, the legal title to the plaintiff.

The claimants for the lot before the townsite board were Ruth A. McKay and Jonas H. Cook. Cook claimed the deed by virtue of his settlement and occupancy of the lot from the 22d day of April, 1889. Ruth A. McKay based her claim upon the ground of the award and certificate of the "Board of Arbitration," which had been constituted by the provisional government of the City of Guthrie, dated May 14, 1899, issued to one George H. Bennett, and assigned to D. S. McKay, her agent, on the last named date, and by said agent transferred to her, upon an instrument of writing signed by Bennett and one L. E. Pitts, upon the erection upon the lot of a substantial frame house and the occupancy of the same, and upon the payment of taxes upon the premises.

The case was taken upon appeal from the action of the townsite board to the commissioner of the general land office, and a finding of fact and conclusion of law made, awarding the lot to Cook. Upon review, a second finding of facts was likewise made by the commissioner of the general land office, and the lot confirmed to Cook.

Upon appeal to the secretary of the interior, the finding of facts made by the commissioner of the general land office was confirmed, with emphasis, and the same conclusions of law reached, and a deed for the lot issued by the land department to Cook.

It is claimed in this action by the plaintiff, McCord, that Ruth A. McKay conveyed the premises to E. D. Nix, who in turn, on the ———— day of November, 1893, conveyed the property to the plaintiff, who claims occupancy since the conveyance to her.

Upon the hearing before the district court of Logan county, the findings of fact of the commissioner of the general land office originally and upon review, and their affirmation by the secretary of the interior, were introduced in evidence, with other testimony, and judgment was rendered in behalf of the plaintiff, McCord, awarding the lot to McCord, the defendant declared to hold the deed in trust for her, and required to convey the legal title to the plaintiff within sixty days.

It is not denied that Cook was the first settler upon the lot in question after the opening of the land to settlement on the 22d day of April, 1899; that he reached it at half past 1 o'clock, began improvements upon it, and if he lost it at all, lost it by reason of abandonment. The findings of fact made by the commissioner of the general land office make the following, among other findings of fact: "The testimony shows that Cook came to Guthrie on the first train, and reached this lot at 1:30 P. M., April 22d, 1889, staked off the lot and put up a notice showing his claim, about 1:40 P. M.    He deposited his luggage on the lot, and put a wagon cover over a ridge pole and slept there a few nights, but owing to the cold weather, slept on the adjoining lot, but prepared his food on the lot here claimed.    *    * Cook shipped from Howard, Kansas, a large tent and a half car load of provisions, and the necessary furniture

and articles to start a restaurant or hotel; that the rail-road company agreed to have this freight in Guthrie not later than April 23. It arrived May 8 or May 9, after Cook was forced to vacate the lot; on May 10, 1889, Cook served notice of his claim on the acting mayor of Guthrie, the city clerk, Bennett, and D. S. McKay, 'warning them that by reason of a lawful, *bona fide* and actual settlement or entry, he claimed ownership to this lot, and warning them against issuing any certificate purporting to invest title to one Bennett, or his assigns, or other persons.' Cook was not advised of the hearing before the board of arbitration, (a board appointed by the settlers on the townsite of Guthrie, without legal authority,) until the trial was about closed, when one member of the board went to the depot, where Cook was waiting for his tent and goods, and informed him, and when he reached the place of hearing the case was closed, and he was not allowed to be heard. * * Bennett brought lumber on lot 40, and Cook, or men employed by him, threw it off two or three times, when a policeman appeared, and said he was sent there by the chairman of the arbitration board, or some city official, to see if Cook interfered with Bennett's improvements. The board of arbitration decided against Cook, and he was kept off the lot, and Bennett went on with his improvements. * * No one was allowed to go upon or attempt to improve a lot unless he held a so-called warrant certificate issued by this board of arbitration. An ordinance was soon passed, making such an offense punishable by fine and imprisonment. When Cook's goods arrived, he was not allowed to go upon the

lot.    He stored his goods on an adjoining lot where they still remain.    May 10, 1889, Cook issued the notice above quoted.    The 'warrant certificate' issued by the city authorities to Bennett is dated May 14, 1889.    On the same day he assigned it to D. S. McKay, agent, who in turn transferred it to Ruth A. McKay, who was his wife, May 16, 1889.    There appears to be no deed of conveyance from McKay to his wife.    A quit-claim deed, admitted in evidence as the original, and dated May 14, 1889, conveying the land from Bennett and Pitts to D. S. McKay, contains the following:    'And now, for and in consideration of $200, do hereby sell and transfer to Mrs. D. S. McKay ——————— all their right, title and interest to said McKay, Ag't.'    This blank space shows that the letters 'Ag't.' have been erased.    The letters 'Mrs.' have been interlined.    This deed contains an affidavit of A. A. Humphrey and J. B. Frost endorsed thereon, dated May 4, 1889, to the effect that Bennett and Pitts were the original locaters. The deed was filed for record April 6, 1890.    A copy of said deed, certified to by the county clerk of Logan county, Oklahoma, "which reads: 'And, now, for and in consideration of the sum of $200, do hereby sell and transfer to D. S. McKay all their right, title and interest in the same to said McKay.'    Counsel for Cook claims that the original deed has beeen changed.    As the deed now reads, it would appear that Mrs. D. S. McKay was the agent for some one.    It is not shown that D. S. McKay occupied said lot during the two days he held the warranty certificate given him by Bennett. There is nothing to show that Ruth A. McKay ever resided in Guthrie or in the Territory of Oklahoma, or

ever saw the lot.    From the testimony it appears that
Cook never abandoned his claim to said lot.   *     *
When his tent arrived he had been driven from the lot.
From the testimony and the circumstances surrounding
this case, I cannot agree with your conclusions. Your
decision (that is, the decision of the townsite board of
Guthrie,) awarding the lot to McKay is, accordingly,
reversed.    I am of the opinion that Cook is entitled to
the lot."

A motion for review was filed, and the case again
reconsidered by the commissioner of the general land
office, and the findings of fact in every substantial and
material particular are identical with those in the find-
ings as here stated, so far as they have been recited here.
The second finding of fact made by the commissioner
of the general land office re-asserts that Cook was forced
to vacate the lot, and that "while he was occupying the
lot Bennett forcibly, on or about April 25, 1889, entered
upon the same, and attempted to improve and exercise
ownership over it."

The evidence of an additional witness is cited, con-
firming the fact that the arbitration was taken up in
Cook's absence, without notice to him, and that he was
not allowed to testify before the arbitration board,
although he proceeded to the hearing as soon as notice
was given to him, and that "the testimony conclusively
shows that he was only waiting the arrival of his goods,
and it certainly would not have been thereafter, (that
is, after he was prevented from improving the lot by
force, by Bennett and the city council,) consistent with
business principles to have improved a lot that had been

adjudged to be the property of another." It appears that on May 20, 1889, the city council passed Ordinance 44, the second section of which makes it a misdemeanor in all contested cases, punishable by a fine or imprisonment, or both, if any person other than the one to whom the award had been made by the board of arbitration, to attempt to put any kind of improvements on the lot.

And the finding further says that the "evidence is conclusive that Jonas H. Cook was the first legal settler upon this lot, as visible signs of possession deposited his baggage, dug a trench for cooking, put up stakes with his name and date of occupancy, erected wagon tent on ridge pole for sleeping place and shelter, and remained till after arbitration," and "that Cook had no idea of abandoning his claim, is shown by his remaining upon the same till arbitrated off."

A motion for review was denied, and an appeal taken to the secretary of the interior, who briefly affirms the findings of fact, and says, that: "About May 7, the board of arbitrators of the town of Guthrie awarded the lot to Bennett, without notice to Cook, and under ordinances of the town council; * * any person who disregarded the awards of that tribunal subjected himself to a heavy fine. Cook did not yield to these authorities, however, until the police compelled him to do so, and even then he continued to publicly assert his claim," and that "the testimony is convincing that Cook was the first occupant of the lot, and that although, because of the non-arrival of his tent and goods, he did not improve it, he maintained actual occupancy in good faith until he was compelled by the police to yield to the

award of the board of arbitration. Waiving the question of authority of the board of arbitration in any case, as it proceeded without notice to Cook, its action in this case was illegal, and by being forced to yield to it he is excused from his failure to make improvements within reasonable time, and to maintain actual occupancy to the date of the townsite entry."

The decision of the general land office was affirmed, and deed issued to Cook.

Opinion of the court by

McATEE, J.: To justify the conclusion reached by the trial court, it must have found that Cook had abandoned the lot in litigation. The finding of facts, however, passes conclusively, not only in the original finding of facts made by the commissioner of the general land office, but by the second finding of facts made by him, as well as the finding of facts made by the secretary of the interior. In each and all of these findings respectively, the fact that Cook had first occupied the lot, settled upon and improved it; had in good faith endeavored to occupy it for business purposes; had never either relinquished or surrendered it; had been a continuous occupant of it, but for the interference of Bennett, and the forcible methods of the so-called "arbitration board," which set itself up with an assertion and exercise of power at that time; that he had always retained the intention after being warned and forced off, of returning to and occupying the lot; and that of all these things he had given constant notice to all the parties interested and interfering with his peaceable and rightful possession, until Bennett, by his

forcible intervention, backed up by the so-called police officers of that time, and the warning conveyed in the municipal ordinance No. 44, together with the unfair and pretended hearing of the case before the so-called "board of arbitration," if we had any right to pass upon the question here, we would be compelled to find that he had never abandoned the lot.

In the case of *Betts v. Townley*, 20 L. D. 425, which went up to the secretary of the interior from Oklahoma City, the facts were, for all practical purposes, exactly like those in the present case: "It is in evidence that immediately after the opening up of the Territory, a provisional government was formed for the government of Oklahoma City, and a citizen's committee of fourteen members was appointed to adjust matters between conflicting lot claimants. While this committee heard proof, and was not altogether arbitrary in its decisions, it was the outgrowth of the emergency of the hour, and was without any express warrant of law. It is clear, however, that while the board had no legal authority to determine these controversies, it had the actual power behind it, supported by public sentiment, to enforce its decisions. * * It is in evidence that in other cases, where defeated claimants refused to abide the decision of the committee, that force was used, and it is a reasonable presumption that Betts and Harrah would have been forcibly ejected from the lot, and perhaps arrested for violation of a city ordinance, if they had attempted to remain thereon." One of the claimants in that case contented himself with publishing a notice to all persons that he was the first occu-

pant of the lot, and intended to set up a claim for it before the townsite commissioners.

Under the circumstances this was held to be a sufficient assertion of right, and it was held in the case, that: "A town lot claimant who vacates a lot in obedience to an award made by a citizen's committee, can not be held by such action to have voluntarily abandoned his claim to said lot."

In matters passed upon by the land office, and which are open for review by the courts, it has been repeatedly decided by the supreme court of the United States, that the findings of fact made in the land department are final, and will not be reviewed in the courts, in the absence of fraud or imposition or mistake. (*Johnson v. Towsley*, 13 Wall 84, 20 Coop. Ed. 487.)

And it was said in *Shepley v. Cowan*, 91 U. S. (Co-op. Ed. vol. 23, p. 438,) that: "The officers of the land department are specially designated by law to receive, consider and pass upon proofs presented with respect to settlements upon the public lands, with a view to secure the rights of pre-emption. If they err in the construction of the law, or if fraud is practiced upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions; but for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from one officer to another of the department, and, perhaps, under special circumstances, to the president. It may also be and probably

is true, that the courts ·may furnish, in proper cases, relief to a party where new evidence is discovered, which, if possessed and presented at the time, would have changed the action of the land officers; but, except in such cases, the ruling of the department on disputed questions of fact made in a contested case must be taken, when that ruling is collaterally assailed, as conclusive."

And it was said in *Vance v. Burbank*, 101 U. S. 514, (25 Co-op. Ed. 930,) that: ' "The question in dispute is one of fact; that is to say, whether Scott, when he demanded his patent certificate, as against the other contesting claimants, had resided on and cultivated the lands in dispute for four consecutive years, and had otherwise conformed to the requirements of the donation act. This was to be determined by the land department, and as there was a contest, the contending parties were called on in the usual way to make their proofs.    They appeared, and full opportunity was given Scott to be heard.    He presented his evidence and was beaten, after having taken the case through, by successive stages on appeal, to the secretary of the interior.    This, in the absence of fraud, is conclusive on all questions of fact. We have many times so decided."

And it was expressly held in *Lee v. Johnson*, 116 U. S. 48, (Co-op. Ed. vol. 29, p. 571,) that abandonment is a question of fact, and that the findings of the secretary of the interior, in the absence of fraud and imposition, are final; in which the language of the court is, that: "It is clear that their attention was drawn to it by the character of the settlement of Johnson, and that they considered whether his entry was made to acquire a home

for himself or for his son-in-law; whether his residence had been sufficiently personal and continuous to save and perfect any right, if in fact he had ever initiated any, and whether or not he had abandoned the land."

And it was said in *Marquez v. Frisbie*, 101 U. S. 473, (Co-op. Ed. vol. 25, p. 800,) that even where there is a mixed question of law and fact, and the court cannot so separate it as to see clearly where the mistake of law is, the decision of the tribunal to which the law has confided the matter is conclusive.

The question, therefore, having been tried in the court below upon whether or not Cook had abandoned the lot, and the findings of fact in the successive stages of investigation in the department having been uniformly to the effect that he had not abandoned, but had been forced from it, that finding is conclusive here.

But the findings of fact in the interior department also contained the statement that there appeared in evidence to be no deed of conveyance from McKay to his wife; no evidence whatever that Ruth A. McKay had ever resided in the Territory or occupied or seen the lot, and that, on the contrary, the deed from Bennett and Pitts to D. S. McKay appeared to have been interlined by the insertion of the word "Mrs." before the words "D. S. McKay," and that there appeared to be an erasure of the word "Ag't" after the words "D. S. McKay," the apparent and perhaps the necessary inference being that the deed from Bennett and Pitts to McKay was so altered after execution and delivery, so as to make the original deed to McKay to appear in lieu of a conveyance from D. S. McKay to her, which would have been nec-

essary to perfect her right to set up any claim to the lot, and that she had never, therefore, received any conveyance of the interest of the preceding occupants, nor had any right whatever to set up the claim upon which this action is founded.

The judgment is reversed, and remanded to the district court with directions to proceed in accor'lance with this opinion.

All of the Justices concurring.