## *REYNOLDS v. HILL.

No. 5135 (Nos. 5135 to 5139 Consolidated.)

Opinion Filed October 13, 1914.

Rehearing Denied November 17, 1914.

(143 Pac. 1154.)

1. **PUBLIC LANDS—Proceedings in Land Office—Finding of Fact— Conclusiveness.** In a suit to have the court declare defendant a trustee for plaintiff as to lands in controversy on the ground that the Secretary of the Interior, as a result of gross mistake of facts and an erroneous view of the law in a contest theretofore pending before him, had rendered a decision allotting the lands to defendant and issuing him a patent therefor, there

---

*Appealed to the Supreme Court of the United States.

being a finding by the Secretary that the lands were abandoned, and therefore a part of the public domain at the time they were entered and improved by B., from whom defeno-ant took title, held, that such finding of abandonment, being a finding of fact, is conclusive on this court. Held, further, that the holding of the Secretary that the Chickasaw statute applied and made no exception as to minors, who thereafter attained their majority, being a mixed question of law and fact, his decision is binding on this court.

2.    APPEAL AND ERROR—Mixed Question of Law and Fact—Conclusiveness of Findings. Where there is a mixed question of law and fact, and the court cannot so separate them as to determine where the error of law is, the decision of the tribunal to which the law has confided the matter is conclusive.

3.    PUBLIC LANDS—Proceedings in Land Office—Contests—Indian Lands—Will—Effect as Evidence. Where in a contest before the Secretary of the Interior contestants based their title upon the will of a white man, who intermarried with a Chickasaw woman of Indian blood, purporting to devise to his widow and heirs his improvements upon the public domain, which the Secretary found were thereafter abandoned and became a part of the public domain, held, that the Secretary did not err in laying the will out of the contest before him, for the reason that, if admitted, it was without probative force.

(Syllabus by the Court.)

*Error from Superior Court, Grady County;*
*Will Linn, Judge.*

Action by Harry F. Hill, a minor, etc., against Frank Reynolds, a minor, etc. Judgment for plaintiff, and defendant brings error. Reversed.

*F. E. Riddle,* for plaintiff in error.

*C. B. Stuart* and *Bond & Melton,* for defendant in error.

TURNER, J.    On March 12, 1912, Harry F. Hill, a minor, by his guardian, sued Frank Reynolds, a minor, by his guardian, in the superior court of Grady county. The object of the suit was to have the court declare defendant a trustee for plaintiff as to the lands set forth in his petition, wherein he alleges that the Secretary of the Interior, as a result of gross mistake of facts and an erroneous view of the law, in a contest theretofore pending before him, had on May 9, 1911, rendered a decision allotting the lands to defendant. After answer filed, in effect a general

denial, there was trial to the court and judgment for plaintiff canceling the patent issued to defendant for the land in controversy, and defendant brings the case here. The decision complained of, and all the testimony considered by the Secretary of the Interior in rendering the same, was, by agreement of counsel, introduced in evidence, together with other documents, not necessary to mention, which were introduced over objection of defendant.

From the opinion of the Secretary it appears that the contests before him were brought in behalf of the plaintiff, Harry F. Hill, J. B. Hill, and Lewis James, minor Choctaws, against Frank Reynolds, the defendant, and Willie and Ethel Reynolds, minor Chickasaws, to determine the right to select in allotment certain lands in the Chickasaw Nation (described in the petition) embracing 420 acres. The Secretary found that the land practically embraced the east half of section 32 and the west half of section 33 in township 7 north, range 6, of the Indian meridian, and once a part of a much larger tract, known as the C. L. Campbell farm, composed of about 12,000 or 15,000 acres. Campbell was a white man who intermarried with a woman of Indian blood and claimed and occupied the lands in controversy as a part of his entire holdings for many years prior to 1896, when he died. Campbell used the major portion of his holdings for grazing, but reduced some 1,200 to 1,500 acres to cultivation. His home place and buildings were located on the northeast quarter of section 33, considerably east of the land in controversy. North of his home place was a large tract of land known as his "horse pasture." Following practically the lines of the section in controversy was a fence, and, although the land thus inclosed was used principally for grazing purposes, two fields of twelve or fifteen acres each, and probably one of 35 acres, were in different parts of the inclosure, but were not separately fenced; a fourth field of 60 or 75 acres was in this same inclosure, but was only "broke out" and not in cultivation. Campbell left a will, wherein he appointed W. L. Sawyer administrator and J. L. Tuttle guardian of his minor children. Said will, certified to as a true copy by the probate clerk of Pontotoc county, Chickasaw Nation, on April 13, 1904, was sought to be introduced in evidence before the Secretary, as the basis

of the Hill title, but was excluded.   By this will, Campbell bequeathed his personal property, including his interest in said 12,000 or 15,000 acres, to his wife and five minor children, share and share alike; other property he left to his wife and children, which included two adult daughters, in equal shares.   The Secretary construed the will to mean that the adults were to receive their share within one year, and that the shares of the minors were to be held in trust by the guardian.   After Campbell died, his wife and minor children continued to occupy the old Campbell home. In 1899 she married Dr. Minter, and together they continued to live at the same place.   Upon allotment of the tribal lands in 1902, Mrs. Minter took the land on which the Campbell home was located as her allotment; other lands of the Campbell holdings were taken as the allotment of Dr. Minter and a daughter.   Other of said lands were allotted to certain of her children, while other portions were disposed of and the proceeds used for providing allotments elsewhere for other members of the family.   About three years after the death of Campbell (that is, on January 1, 1899), and before her marriage to Minter, Mrs. Campbell executed for value a bill of sale purporting to convey to one Blassengame her right, title, and interest in and to the tract of land in controversy and to the north "horse pasture," not in controversy.   In March, 1899, Blassengame took possession of the land described in said bill of sale and held the same until December 10, 1902, during which time he made considerable improvements thereon, and on said date conveyed the same to Brimmage for value, who on March 6, 1903, assigned his interest to C. A. Reynolds, the father of the minor contestee, plaintiff in error in this case.

The Secretary found the contestant's chain of title to be as follows:   After Tuttle, as guardian, had set apart to each of the heirs his proportionate share of the Campbell lands, upon his arrival of age, on November 18, 1902, Tuttle, as guardian of John and Rex Campbell, minors, together with Mrs. Minter, *nee* Campbell, and her adult sons M. T., L. A., and Holmes Campbell, executed, for value, a bill of sale purporting to convey to Dave Hill, the father of contestants, substantially the same land as that described in the bill of sale from Blassengame to Brimmage (that is,

the section of land in controversy), and ·on December 24, 1902, Holmes Campbell and Tuttle, for value, joined in a bill of sale purporting to convey to him 160 acres, 80 acres of which only is in controversy. The Secretary found that neither of these conveyances was made under the authority of, or was confirmed by, any court, and further that no serious effort was ever made by any one to put Blassengame out of possession of the land in controversy. The Secretary said the evidence before him failed to show that any improvements were made on the land by the widow or any of the Campbell heirs after his death, but that probably some of the land in controversy was cultivated by tenants under the widow. In his opinion the Secretary further says:

"It appears no act of Tuttle's by way of renting the land or disposing of the interest of the heirs therein was ordered or confirmed by any court, either of the Chickasaw Nation or the United States, and every indication points to the conclusion that, during the time he was supposed to act as guardian, matters were allowed to drift merely to take such course as best they might, without any special control by him pending the allotment of the land. * * * During the period these lands were held by Blassengame, valuable improvements were made upon them, consisting of buildings, fences, wells, and cultivation, including the drainage of considerable acreage. Blassengame estimated these improvements to be $2,500."

It is unnecessary to further recite the opinion of the Secretary. It is sufficient to say that he laid out of the controversy Campbell's will, together with the bills of sale to Hill and Mrs. Campbell's bill of sale to Blassengame, and found, as a matter of fact, that, since the death of Campbell, the land in controversy had been abandoned, if in fact it was ever a legal holding under the law of the Chickasaw Nation, sustained the conveyance made by Blassengame to Brimmage and by him to Reynolds, the father of contestees, and held they were entitled to allot the lands in controversy, and patents to them accordingly issued. In so doing he held the holding was no hardship on the heirs of Campbell, for the reason that they had already been allotted elsewhere out of the Campbell holdings.

Assailing this decision for gross mistake of facts, the plaintiff below, defendant in error here, alleges six, and for errors of law

he alleges eight, all of which the trial court sustained and set aside the decision of the Secretary in a general judgment in favor of plaintiff. It is sufficient to say of those alleged gross mistakes of fact that plaintiff in error, quoting from the testimony before the Secretary, amply sustains every one of them as found by the Secretary. But it is contended the Secretary entertained an erroneous view of the law when he held that the testimony was sufficient to show an abandonment of the property in controversy after the death of Campbell, and that the continued possession of Blassengame, under the bill of sale from Mrs. Campbell, from 1899 to 1902, when he conveyed to Brimmage, was not sufficient to show such abandonment. The law applied by the Secretary was an act entitled "An act defining what shall constitute a claim in the Chickasaw Nation." Section 6:

"Be it further enacted that any citizen that abandons a claim for two years, it shall become public domain of the Chickasaw Nation and subject to entry by any citizen of this nation. * * * "

If the Secretary erred, it would seem to follow that the widow and heirs of Campbell had a right, under his will, to convey the land in controversy to Hill; that is, if the will had any probative force. The Secretary in effect held that it did not, but whether he erred or not, under our view of the case, it is not necessary to decide. In considering this assignment, we are invited to go into the testimony, which defendant in error arrays from the record, and say whether the Secretary erred in arriving at his conclusion that the land was abandoned. We decline, for the reason that the finding of abandonment was a conclusion of fact, and not of law, and hence is binding on us.

In *Cook et al. v. McCord et al.,* 9 Okla. 200, 60 Pac. 497, the court cited *Lee v. Johnson,* 116 U. S. 48, 6 Sup. Ct. 249, 29 L. Ed. 570, where it is held that abandonment is a question of fact, and in the syllabus said:

"The question as to whether or not a lot has been abandoned by the claimant is a question of fact, and the findings of the proper officers of the land department are, in the absence of fraud, imposition, or mistake, final upon that question."

In *Ross v. Stewart,* 25 Okla. 611, 106 Pac. 870, it is said:

"When officers of the Land Office decide controverted questions of fact, in the absence of fraud, imposition, or mistake, their decisions on those questions are final, except as they may be reversed on appeal in that department."

In holding that the lands were abandoned between 1899 and 1902, the Secretary impliedly held that the Chickasaw statute, *supra,* made no exception as to the Campbell minors, who thereafter attained their majority. This is urged as error, on the ground that the facts could not amount to an abandonment as to them. But we are not at all sure that in so holding the Secretary erred, as a matter of law. The statute makes no exception as to minors, but reads: "Any citizen that abandons a claim for two years.  *  *  * " But let that be as it may, the question before him being a mixed question of law and fact, his decision is also binding on us. In *Marquez v. Frisbie,* 101 U. S. 473, 25 L. Ed. 800, it is said:

"Even where there is a mixed question of law and of fact, and the court cannot so separate it as to see clearly where the mistake of law is, the decision of the tribunal to which the law has confided the matter is conclusive."

See, also, *Jordan v. Smith,* 12 Okla. 703, 73 Pac. 308; *Paine v. Foster,* 9 Okla. 259, 60 Pac. 24.

As this finding of fact by the Secretary cannot be disturbed, it follows that, by abandonment, the land became public domain, subject to entry by Blassengame. And, as the Secretary was right in laying out of the case the paper title of both sides to the contest, it would be unprofitable to further pursue the inquiry of whether the Secretary erred in holding that the widow and heirs of Campbell had anything to convey, or to consider further the links in the chain of title of either contestants or contestees, as defendant in error would have us to do by considering what he has to say, beginning on page 48 of his brief. Neither would it be profitable to say whether the Secretary erred in refusing to admit in evidence, as incompetent, the will of Campbell and consider the same as the foundation of the Hill title. This for the reason that the same, if so admitted, could have no force or effect to authorize a conveyance of lands subsequently abandoned and a part of the public domain, such as were the lands

in controversy at the time said conveyances were sought to be made. Besides, it would seem that the Secretary is the exclusive judge of the competency of this evidence. See *Wiseman v. Eastman,* 21 Wash. 163, 57 Pac. 398, and cases cited. For obvious reasons we will not consider the action of the trial court in rejecting the offer of evidence by. plaintiff of the record in *Reynolds v. Hill,* 28 Okla. 533, 114 Pac. 1108.

For the reason that the court erred in holding that the decision of the Secretary was based upon gross mistakes of fact and erroneous views of the law, and, as a result, the patents to the land in question were issued to Frank Reynolds instead of Harry F. Hill, which we find to be not so, but that the patent was of right issued to said Reynolds, the judgment of the trial court is reversed, not only in this case, but in causes Nos. 5136, 5137, 5138, 5139, consolidated herewith, and stipulated to abide the event.

All the Justices concur, except RIDDLE, J., who was of counsel for plaintiff in error, not participating.