## O'QUINN et al. v. JOINER et al.

No. 7380—Opinion Filed May 22, 1917.

(166 Pac. 142 )

### 1. Indians—Indian Lands—Rights of Choctaw to File.

Section 11 of the act of July 1, 1902 (32 Stat. 641, ch. 1362), gives to a duly enrolled member of the Choctaw Nation a preference right to file land of such nation where his improvements are located, and section 71 of said statute allows such Indian nine months from the date of an adverse filing on such land in which to contest such filing. These rights cannot be denied or destroyed by the issuance of a certificate of allotment on such adversary filing prior to the expiration of the time given to the owner of the improvements in which to file contest.

### 2. Same—Allotment—Certificates.

An allotment certificate regularly issued under the act of July 1, 1902, conveys an equitable title to the allottee which may in due time ripen into a legal title by the issuing and delivery of patent.

### 3. Same.

The provision of section 23, Act of July 1, 1902, that "allotment certificate issued by the Commission to the Five Civilized Tribes shall be conclusive evidence of the right of any allottee to the tract of land described therein" must be interpreted to mean a certificate regularly issued, and cannot be so construed as to declare that a certificate prematurely issued furnishes such conclusive evidence.

(Syllabus by Galbraith, C.)

Error from District Court, Stephens County; Frank M. Bailey, Judge.

Action by C. M. Joiner and another against Thomas M. O'Quinn and another. There was a judgment for plaintiffs, and defendants bring error. Reversed, with directions.

Womack & Brown and Stuart, Cruce & Cruce, for plaintiffs in error.

H. A. Ledbetter and F. M. Adams, for defendants in error.

Opinion by GALBRAITH, C. This action in ejectment and to quiet title to the northwest quarter of the southwest quarter of the southwest quarter and the south one-half of the southwest quarter of the southwest quarter of section 16, township 2 north, range 7 east, located in Stephens county, Okla., alleged to have been a part of the surplus allotment of William Willis, a deceased Choctaw Indian, allotted in his name by the administrator, was commenced by the defendants in error, claiming the same under a warranty deed from the sole surviving heir of the allottee. The plaintiffs in error, who were the defendants in the trial court, answered by setting up their claim of title being the possession and occupancy of the land, and the ownership of the improvements thereon by O'Quinn at the time of its selection by the administrator, the contest of the filing on behalf of Willis to a successful termination, and the issuance of the allotment certificate, and a patent for the land to Thomas M. O'Quinn, by the principal chiefs of the Indian Nations, and the approval thereof by the Secretary of the Interior, and the conveyance of the premises to the codefendant Thompson. The reply filed denied the authority of the Commission to the Five Civilized Tribes to permit O'Quinn to

file a contest against the allotment in the name of Willis, for the reason that the land at that time had been allotted, and the allotment certificate issued was outstanding and had not been canceled by the judgment of a competent court; that therefore the action of the Commissioner in permitting the contest to be filed was without authority of law. The cause was tried to the court upon the issues made by the pleadings, and judgment rendered for defendants in error for the possession of the land and quieting title in them. To review that judgment the defendants in the trial court, as plaintiffs in error, have prosecuted an appeal to this court by petition in error and case-made.

There are a number of assignments of error set out in the petition in error, but all are waived except one, namely, that the judgment of the trial court was and is contrary to law. This assignment is all that it will be necessary to consider in the determination of this cause.

The facts are unusual, but there is very little, if any, controversy about them. It is admitted that both William Willis and Thomas M. O'Quinn were duly enrolled members of the Chickasaw Nation, and entitled to an allotment of the lands of that nation; that the land involved in this action was in the possession of O'Quinn on January 19, 1905, and that he owned the improvements thereon, and had been in the quiet and peaceable possession thereof for years prior to that time, and that his possession was continuous and uninterrupted; that on January 19, 1905, William J. Cassidy, the administrator of the estate of William Willis, deceased, filed the land as a part of the allotment of Willis, under section 22 of the act of July 1, 1902, and that an allotment certificate was issued in the name of Willis April 28, 1905; that on May 8, 1905, the father of O'Quinn appeared at the land office and made application to file the land for his minor son, Thomas M. O'Quinn; that this filing was rejected because the land had been filed upon by the administrator of Willis; that O'Quinn on that day instituted a contest against Willis' filing; that the application of Thomas M. O'Quinn was then pending before the Secretary of the Interior for identification as a Mississippi Choctaw, and on account of this fact the Commissioner ordered that no action be taken on the contest until the contestant was identified; that on June 27, 1906, O'Quinn was duly identified as a Mississippi Choctaw and the contest was set for hearing on August 13, 1906; that notice of the hearing was given and proof of service filed; that on August 13, 1906, the parties appeared, and by agreement the hearing of the contest was

continued until October 4, 1906, and that on that day the hearing was continued until October 6, 1906; that on October 6, 1906, the parties appeared, and by agreement continued the contest until November 6, 1906, on which day the contest was again continued until December 6th; that on December 6, 1906, the parties appeared, and it being shown that Cassidy, the administrator, had been discharged prior to the service of the notice of contest upon him, the hearing was continued until February 5, 1907; that on December 29, 1906, the contestant's motion to amend his complaint by substituting the name of J. W. Anderson as administrator of William Willis, deceased, was granted, and the petition amended accordingly; that on April 13, 1907, the Secretary of the Interior ordered the name of Thomas M. O'Quinn stricken from the roll of citizens by blood, this action having been taken without notice or hearing, and the contest case was dismissed, and the land in controversy was held to be a part of the allotment of William Willis, deceased; that on February 20, 1908, Emmett Anderson, the sole and only heir of William Willis, deceased, conveyed the land to Joiner and Wolverton by warranty deed, and on the 5th day of October, 1909, Emmett Anderson, joined by his wife, made a second deed for the land to the grantees named in the first deed; that on March 1, 1909, the name of Thomas M. O'Quinn having been restored to the final rolls of citizens by blood by order of the Interior Department, under date of February 20, 1909, the contest case was reopened, and the contest was ordered to be heard upon its merits at the time and place to be fixed by the Commissioner; that on September 22, 1909, the contest was set for hearing on October 27, 1909, at Chickasha; that on October 27, 1909, the contest was tried and taken under advisement, and that on November 19, 1909, a stipulation for an agreed judgment was signed by counsel and filed with the contest official, under which a judgment was entered awarding the land in controversy to Thomas M. O'Quinn, and that thereafter the allotment certificate was duly issued, and later a patent was issued and delivered to O'Quinn for the land, and that the stipulation for judgment under which the land in controversy was awarded to Thomas M. O'Quinn was signed by the leading counsel for the defendants in error in the instant case, and that this attorney appeared in the contest case as attorney for the Willis heir, the grantor of the defendants in error herein.

It is argued on behalf of the defendants in error that the Interior Department had exclusive jurisdiction of the allotment of these Indian lands, and that the issuance of an al-

lotment certificate was an adjudication in the nature of a judgment vesting the title to land described in the allottee named therein, and that section 23 of the Act of July 1, 1902, declared that "allotment certificates issued by the Commissioner to the Five Civilized Tribes shall be conclusive evidence of the right of any allottee to the tract of land described therein," and that there was no contest pending against the Willis certificate of allotment after the dismissal of O'Quinn's contest in 1907, and at the time of the execution of the first deed to the defendants in error by Willis' heir; that the grantees of that deed had the right to rely upon the allotment certificate, and to give to it the evidential force which section 23, above set out, declared it should have, and to assume that the title to the land was in the heir, and it being unrestricted, and he being competent to convey, that his deed would and did convey the title to them, and that they are innocent purchasers of the land, and that their rights therein ought to be protected, and that they have the legal and equitable title to the land, and should be awarded the possession thereof; that their title is not affected by the fact that the Department at a subsequent date, without authority so to do, had reinstated O'Quinn's contest and had issued an allotment certificate for the land to him, and also delivered a patent for the land to him; that this was a mistake on the part of the government or the officials having charge of the disposition of these lands, and the defendants in error are in no way chargeable with these errors.

It may be said in reply to this argument that under section 11 of the act of July 1, 1902, O'Quinn was given a preference right to allot the land in controversy by reason of his possession and ownership of the improvements thereon, and that under section 71 of said act he was given the right to contest the attempt of any other member of the tribe to file upon this land, provided he asserted his right within the nine months after the date of the adverse filing; that, while section 23 of said act declares that allotment certificates shall be conclusive evidence of the right of any allottee to the tract described therein, this cannot be given the construction contended for by the defendants in error, namely, that an allotment certificate, no matter how issued, whether regularly or by mistake or inadvertence, must be held to be conclusive evidence of title in the allottee. It could not have been. the intention of Congress to declare that a certificate irregularly issued or issued by inadvertence or mistake could have such force and effect, for the sufficient reason that such construction would render ineffectual the preference right

to allot the land given by section 11 by reason of the ownership of the improvements, and also the right to contest the attempt of any other member of the tribe to allot the land, provided that this right was asserted within nine months from the date of such filing. If section 23 be construed to read an allotment certificate regularly and properly issued shall be conclusive evidence of title to the land in allottee, then the rights given under sections 11 and 71 may be given full force and effect. The allotment certificate issued before the expiration of the time allowed for contest, nine months from the date of filing, is prematurely issued and is potential merely. It may ripen into title and it may not. Prior to the expiration of the contest period the equitable title evidenced by the allotment certificate remains in abeyance. This construction makes effective the rights given by sections 11 and 71, as well as those of the section under consideration. By it the three sections stand, and no one of them is emasculated.

In the instant case O'Quinn was in the possession of the land and owned the improvements thereon at the time that Willis' administrator filed the same. Under section 11 O'Quinn had the preference right to allot the land, and under section 71 he had nine months after January 19, 1905, the date of the Willis filing in which to contest that filing. Under the law an allotment certificate could not properly issue until nine months after January 19, 1905. The record shows, however, that the certificate to Willis issued on April 28, 1905. It therefore appears that the allotment certificate to Willis was inadvertently issued. That the equitable title conveyed by an allotment certificate was in abeyance and did not vest until the expiration of the nine months allowed for contesting the allotment was held by the Circuit Court of Appeals in Thomason v. Wellman & Rhoades 206 Fed. 895, 124 C. C. A. 555:

"The allotment certificate was the evidence that a selection had been made, but its issuance did not constitute the selection itself. That was done by the formal selection of the surplus allotment on September 19, 1904, at the local land office. Sallie Duncan did all that the law required of her to entitle her to a patent for the land, and the fact that her formal application was subject to contest during a period of nine months in no way affected her equitable interest in the land selected. She subsequently received the allotment certificate, and later a patent for the land; there having been no contest of her selection. The patent issued to her for the land, by relation, became effective as of the date of her selection, namely, September 19, 1904.

"As there was in fact no contest made during the period of nine months allowed by law against the selection of Sallie Duncan, it must be held that by her formal selection of September 19, 1904, her right to a patent for the land became vested, and that she had an equitable interest in the land which she could properly convey to Miller, and having subsequently received a patent for the land her conveyance * * * became entirely valid."

Again, in Ballinger v. United States ex rel. Bell Frost, 216 U. S. 240, 30 Sup. Ct. 338, 54 L. Ed. 464, the same principle was announced, as shown by the following excerpt:

"Thereafter the relator selected the land in controversy, a tract of 40 acres, on which were her improvements. Notice was given as required, and the time in which the contest could be made, nine months, elapsed. Thereupon, as provided by the statute, the title of the allottee to the land selected became fixed and absolute, and the chief authorities of the Choctaw and Chickasaw Nations executed to her a patent, as required, for the land selected. The fact that there may have been persons on the land is immaterial. They were given nine months to contest the right of the applicant. They failed to make contest, and her rights became fixed."

And also in United States v. Whitmire et al., 236 Fed. 474, 149 C. C. A. 526, the Circuit Court of Appeals say:

"By the provisions of Act July 1, 1902, ch. 1375 [32 Stat. 716], the owner of the improvements, who was entitled to an allotment, had the prior right as against any other citizen to select the land upon which the improvements were located, and where any other citizen first selected such land, the owner of the improvements, being entitled to an allotment, could within nine months contest such selection."

In Hill et al. v. Reynolds, decided January 8, 1917, reported in 242 U. S. 361, 37 Sup. Ct. 163, 61 L. Ed. —, affirming the decision of this court (43 Okla. 749, 143 Pac. 1155), the Supreme Court of the United States again announced and applied this principle in a controversy between two sets of Chickasaw heirs, each qualified to take an allotment, and sustained the claim of the heirs owning the improvements.

United States v. Dowden et al. (C. C.) 194 Fed. 475, relied upon by the defendants in error, does not sustain their contention. It is clearly deducible from the decision in that case that the distinguished judge who wrote the decision did not intend to announce and did not announce the rule that an allotment certificate became "conclusive evidence" of title in the allottee until after the expiration of the nine months allowed for contesting the filing. It is pointed out in the opinion that the allottee had done everything required of her to be done in order to be entitled to a patent, and that it did not appear when the certificate was issued, or that a contest had been filed, and that there had not been shown "any reasonable excuse why Carrie L. McClure was not entitled, in due time, to receive a patent for her allotment." In the instant case, however, "reasonable excuse" is made to appear why William Willis was not entitled to receive a patent for the allotment, and why he would not and could not "in due time" become entitled to such.

The fact that O'Quinn's name was arbitrarily stricken from the rolls by order of the Secretary of the Interior did not operate to dismiss his contest (Garfield v. United States ex rel. Goldsby, 211 U. S. 249, 29 Sup. Ct. 62, 53 L. Ed. 168), because such action was beyond the power vested in the Secretary and was an absolute nullity. O'Quinn's contest was not disposed of by such action, and was pending at the time of the execution of the deeds under which the defendants in error claim title, notwithstanding the erroneous order of the Commissioner dismissing said contest (Garland v. Union Trust Co., 49 Okla. 654, 154 Pac. 676). The order reinstating the contest made in 1909 was entirely unnecessary for the reason that it was still pending and undisposed of.

Again, the defendants in error could not have been bona fide purchasers, inasmuch as they were charged with knowledge of the record in the contest case, and all that it disclosed as to O'Quinn's claim, and, further, O'Quinn's possession was sufficient notice to them to deprive them of the status of bona fide purchasers.

In Adams v. White, 40 Okla. 535, 139 Pac. 514, Mr. Justice Kane, speaking for the court, said:

"It has also been held that the possession of real property carries with it the presumption of ownership, and it is the duty of those purchasing such property from others than those in possession to ascertain the extent of their claims, and the open, actual possession of such property gives notice to the world of just such interest as the possessor actually has therein. Russell v. Gerlach, 24 Okla. 556, 103 Pac. 604; Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29; Edwards v. Montgomery, 26 Okla. 862, 110 Pac. 779."

It is very evident that the defendants in error's grantor could not be heard in the court to dispute the title of O'Quinn to the land in controversy for one additional reason, at least, namely, because in the contest case he stipulated that the land should be awarded to O'Quinn. His grantees, not being en-

titled to claim as bona fide purchasers, do not seem to be in any better position here than he would be in disputing O'Quinn's title.

Under the facts in this case and the foregoing authorities it seems that the judgment of the trial court was contrary to law, since both O'Quinn and Willis were properly enrolled members of the tribe by blood, and under the law disposing of the tribal property were entitled to an allotment, but O'Quinn was given a prior right to allot the land in controversy by reason of his possession and ownership of the improvements thereon, and that, he having asserted this right by initiating a contest against Willis' filing within the nine months allowed him by law, and having prosecuted it to a successful conclusion, his preference right to file the land could not be defeated by the inadvertent or improvident issuance of the allotment certificate to Willis prior to the expiration of that time.

The judgment appealed from should be reversed, with directions to the trial court to vacate its judgment, and to enter a decree in favor of the plaintiffs in error awarding them the title to the land, and for costs.

By the Court: It is so ordered.