UNITED STATES v. DOWDEN et al.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

No. 4143.

INDIANS ⟪⇒14—ALLOTMENT OF LANDS—VESTING OF RIGHT—POWER OF SECRETARY OF THE INTERIOR TO CANCEL ALLOTMENTS.

The selection, of an allotment of land by a member of the Chickasaw or Choctaw Tribe of Indians, and the issuance of a certificate of allotment therefor by the Commission to the Five Civilized Tribes, pursuant to statute, vests the allottee with an absolute right to a patent, which may be enforced in the courts, and the Secretary of the Interior has no power to thereafter cancel the allotment and segregate the land for a townsite.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 2, 31–36, 46; Dec. Dig. ⟪⇒14.]

---

⟪⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the United States against E. Dowden and others. Decree for defendants, and the United States appeals. Affirmed.

D. H. Linebaugh, U. S. Atty., of Muskogee, Okl., and C. C. Herndon, Sp. Asst. U. S. Atty., of Tulsa, Okl., for the United States.

Bond, Melton & Melton, of Chickasha, Okl., for appellees.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

T. C. MUNGER, District Judge. The questions involved in this controversy concern the title to a tract of land in Oklahoma, the land formerly having been in the domain of the Chickasaw Nation in Indian Territory. See United States v. Dowden (C. C.) 194 Fed. 475.

A portion of the land was selected as an allotment on July 22, 1903, by the administrator of Aaron Colbert, deceased. Aaron Colbert's name appeared upon the approved roll of the Choctaw Indians as a duly enrolled citizen, but he had died after the ratification of the agreements of distribution made by the Choctaws and Chickasaws and the United States through the Commission to the Five Civilized Tribes, and approved by Congress in section 29 of the act of June 28, 1898 (30 Stat. 505, c. 517), and in Act July 1, 1902, c. 1362, 32 Stat. 641. Conveyances of this land selected were afterwards made by the heirs of Aaron Colbert to Dowden, appellee and thereafter, on April 29, 1904, the Commission to the Five Civilized Tribes issued a certificate of allotment of the land in the name of Aaron Colbert, dated July 22, 1903, and delivered it to Colbert's administrator.

Another portion of the land was selected on January 3, 1905, as a part of her surplus allotment by Carrie L. McClure a white person, without Indian blood, but who was an intermarried citizen of the Choctaw Nation, and whose name appeared on the approved roll of the Choctaw Indians. She then conveyed the land to Dowden and another. A certificate of allotment of this land, dated January 3, 1905, was issued by the Commission and delivered to her before May 27, 1905.

A railroad had been built through this land in 1901, and settlers occupying part of the land had formed a village, and inhabitants thereof in 1902 had petitioned the Commission to the Five Civilized Tribes to recommend to the Secretary of the Interior that the land be reserved as a townsite, and the Commission so recommended in February, 1903; but the Secretary refused the request in March, 1903. Further petitions were presented and on September 15, 1904, the Commission again recommended the reservation of a townsite on the land. Finally, in May, 1905, and after the certificate of allotment had been issued, as before stated, the Secretary of the Interior ordered the segregation of this land as a townsite and that it be surveyed and platted as such and made an order canceling the selection of the allotment by the administrator of Aaron Colbert and in the following month made a like order canceling the selection of the allotment by Carrie L. McClure. The validity of the action of the Secretary of the Interior in ordering the segregation of this land for townsite purposes, and in canceling the

allotments made to Aaron Colbert and Carrie L. McClure, is the question prosecuted in this case, as it is conceded that there is no question of the rights or methods in the selection of the allotments, or of the rights of the heirs of the allottees to make the conveyances, nor that Dowden thereby acquired whatever title the grantors possessed.

In the trial court, the bill of complaint of the United States, whereby it sought to quiet its title to these lands, was dismissed, and it presents this appeal. On behalf of appellant, it is contended that the Secretary of the Interior has discretion to grant or refuse approval of an allotment, and therefore may cancel an allotment certificate issued by the Commission and order the lands to be set aside as a townsite. In the case of Ballinger v. Frost, 216 U. S. 240, 30 Sup. Ct. 338, 54 L. Ed. 464, the statutes which govern the issuance of such an allotment and the segregation of land for a townsite are reviewed. The Secretary of the Interior in that case claimed the right, after the issuance of a certificate of allotment to a Choctaw Indian, and after the execution of a patent to him by the chief officers of the Choctaw and Chickasaw Nations, but before its delivery, to cancel the allotment and to set aside the land as a townsite. This claim was based upon an assumed official discretion so to do, in view of a previous urban occupancy of the land. In denying this claim, and in affirming the award of a mandamus against the Secretary of the Interior for the delivery of the patent, the court said:

"The Interior Department has general control over the affairs of the Indians—wards of the government. In addition, the Secretary of the Interior was by these several acts specially charged with the duty of supervising the action of the Commission to the Five Civilized Tribes in making the allotments authorized by those acts. On both of these grounds he claims authority to have done what he did, and that his acts in that respect are not subject to review by the courts. We have no disposition to minimize the authority or control of the Secretary of the Interior, and the court should be reluctant to interfere with his action. But, as said by Mr. Justice Field in Cornelius v. Kessel, 128 U. S. 456, 461 [9 Sup. Ct. 122, 124 (32 L. Ed. 482)]: 'The power of supervision and correction is not an unlimited or an arbitrary power. It can be exerted only when the entry was made upon false testimony, or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property and a right to a patent therefor, and can no more be deprived of it by order of the Commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it.' See, also, Orchard v. Alexander, 157 U. S. 372, 383 [15 Sup. Ct. 635, 639 (39 L. Ed. 737)], in which it was declared: 'Of course, this power of reviewing and setting aside the action of the local land officers is, as was decided in Cornelius v. Kessel, 128 U. S. 456 [9 Sup. Ct. 122, 32 L. Ed. 482], not arbitrary and unlimited. It does not prevent judicial inquiry. Johnson v. Towsley, 13 Wall. 72 [20 L. Ed. 485]. The party who makes proofs, which are accepted by the local land officers, and pays his money for the land, has acquired an interest of which he cannot be arbitrarily dispossessed.' Whenever, in pursuance of the legislation of Congress, rights have become vested, it becomes the duty of the courts to see that those rights are not disturbed by any action of an executive officer, even the Secretary of the Interior, the head of a department. However laudable may be the motives of the Secretary, he, as all others, is bound by the provisions of congressional legislation. It must be borne in mind that this allotment provided by Congress contemplated a distribution among the Choctaw and Chickasaw Indians of the lands that belonged to them

in common. They were the principal beneficiaries, and their titles to the lands they selected should be protected against the efforts of outsiders to secure them. White men settling on townsites were not the principal beneficiaries. Congress, it is true, authorized townsites, and the town of Mill Creek was established in compliance with the statute. It further provided for an enlargement of any townsite upon the recommendation of the Commission to the Five Civilized Tribes. That recommendation was made in respect to the town of Mill Creek, but disapproved by the Secretary of the Interior. Thereafter the relator selected the land in controversy, a tract of 40 acres, on which were her improvements. Notice was given as required, and the time in which contest could be made—nine months—elapsed. Thereupon, as provided by the statute, the title of the allottee to the land selected became fixed and absolute, and the chief authorities of the Choctaw and Chickasaw Nations executed to her a patent, as required, of the land selected. The fact that there may have been persons on the land is immaterial. They were given nine months to contest the right of the applicant. They failed to make contest, and her rights became fixed. Thereafter the Secretary of the Interior had nothing but the ministerial duty of seeing that a patent was duly executed and delivered."

The effect given to the selection and certification of an allotment in that case necessarily determines the decision here. The allotments were made when the proper selections had been designated and the Commission had approved them by the issuance of the certificates of allotment. They were subject to contest within the nine-months period provided by statute; but if no successful contest was waged, upon the expiration of that period the right to the patent was absolute. The statute says:

"Allotment certificates issued by the Commission to the Five Civilized Tribes shall be conclusive evidence of the right of any allottee to the tract of land described therein." 32 Stat. 644, § 23.

Nothing but a ministerial duty remained to be performed, that of issuance of patents to the allottees. Mullen v. United States, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834; Wallace v. Adams, 143 Fed. 716, 74 C. C. A. 540; Thomason v. Wellman & Rhoades, 206 Fed. 895, 124 C. C. A. 555; Wood v. Gleason (Okl.) 140 Pac. 418.

It is also urged that, because a contest was initiated against the allotment of Aaron Colbert within nine months after its selection by the administrator, the entry was thereby suspended, so that the Secretary of the Interior had the power of cancellation of the selection. It appears that no notice of this contest was served upon the administrator of Aaron Colbert, and that the contestant moved a dismissal of her proceedings, and after a hearing and the taking of testimony on the application the Commission dismissed the contest. The pendency of this contest conferred no power upon the Secretary of the Interior to cancel the certificate without notice to the parties to be affected, and upon a different ground, namely, the desire to segregate the land for a townsite; the contest having been dismissed by the one instituting it.

A further suggestion is made that the filing of a petition before the Commission within nine months from the selection of the allotment, asking for a reservation of a townsite on this land, in effect also was a contest of the claim of allotment; but there is no evidence that notice

of this petition was given to the allottees or to Dowden, and the action of the Secretary appears to have been an executive order.

As the allottees were entitled to a patent for the lands selected by them, and it is conceded that there was no restriction upon their right of alienation of the land to Dowden, the decree of the lower court is affirmed.