UNITED STATES v. WHITMIRE et al.

(Circuit Court of Appeals, Eighth Circuit.    October 13, 1916.)

No. 4699.

1. INDIANS ⬅️13—INDIAN LANDS—ALLOTMENT—CANCELLATION.
    Where an allotment of land was duly made to a freedman, a member of the Cherokee Nation, neither the Secretary of the Interior nor any subordinate officer of that department may cancel it.
    [Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. ⬅️13.]

2. INDIANS ⬅️13—INDIAN LANDS—ALLOTMENT—RIGHT TO.
    A freedman, a member of the Cherokee Nation, secured an allotment of tribal lands on false testimony that he was the owner of the improvements thereon. The owner of the improvements, a white woman who had intermarried with a member of the Nation, filed a contest within nine months, but, it being determined in another case that she was not a member of the Nation, transferred the improvements to her granddaughter. The transfer was made several years after the allotment. Act July 1, 1902, c. 1375, 32 Stat. 716, relating to the allotment of Indian lands, gives the owner of improvements the prior right, as against other members of the tribe, to select the land on which the improvements are located, and provides for contests; but section 69 limits the time for filing a contest to nine months after the allotment. The freedman, on the day of receiving the allotment, transferred the land to another. Held that, though Act March 2, 1907, c. 2521, 34 Stat. 1220, subsequently enacted, authorizes a white person, who had intermarried with a Cherokee citizen and had made permanent improvements on tribal lands, to sell such improvements, the granddaughter of the owner of the improvements could not contest, not having instituted her contest in time, and the freedman being entitled to select the land, save as against the owner of the improvements, and therefore, though the freedman obtained his allotment on false testimony, the allotment and his conveyance cannot be set aside by the officials of the Department of the Interior, as constituting a cloud on the title of the Nation.
    [Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. ⬅️13.]

3. INDIANS ⬅️22—INDIAN LANDS—IMPROVEMENTS—RIGHT TO COMPENSATION.
    Where a white person, who has intermarried with a member of the Cherokee Nation and improved tribal property, transferred the improvements before the enactment of Act March 2, 1907, such person lost the right to have the improvements appraised in accordance with the act.
    [Ed. Note.—For other cases, see Indians, Cent. Dig. § 47; Dec. Dig. ⬅️22.]

4. INDIANS ⬅️15(1)—INDIAN LANDS—ALLOTMENT—RELINQUISHMENT.
    Though the allottee of lands belonging to the Cherokee Nation, who had conveyed them, relinquished his allotment in a contest, a proceeding

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
[1] As modified pursuant to order entered October 30, 1916.

to which his grantee was not a party, the rights of the grantee were unaffected.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 37, 40; Dec. Dig. ⊂⊃15(1).]

5. INDIANS ⊂⊃15(1)—INDIAN LANDS—ALLOTMENT—RIGHTS OF GRANTEE.

Where an allotment received by a freedman of the Cherokee Nation was not subject to attack, though obtained on false testimony, the title of the freedman's grantee could not be attacked, though he knew the allotment was obtained by such testimony.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 34, 37, 40; Dec. Dig. ⊂⊃15(1).]

6. INDIANS ⊂⊃13—INDIAN LANDS—ALLOTMENT—FREEDMAN'S CERTIFICATE—CONVEYANCE.

As Act July 1, 1902, § 21, makes the allotment certificate issued by the Dawes Commission conclusive evidence of the right of the allottee to the land of the Cherokee Nation described, a conveyance of the allottee before the issuance of the patent carries title.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. ⊂⊃13.]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit by the United States against Albert Whitmire and John O. Greenlees. From a decree for defendants, the United States appeals. Affirmed.

William S. Rogers, Sp. Asst. U. S. Atty., of Muskogee, Okl. (D. H. Linebaugh, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

W. A. Chase, of Nowata, Okl. (W. H. Kornegay, of Vinita, Okl., on the brief), for appellee John P. Greenlees.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. Judge Campbell, in his opinion in this case, set out the facts so fully and correctly that we adopt his statement of facts. His statement is:

"On January 25, 1905, defendant Albert Whitmire was a duly enrolled adult freedman citizen of the Cherokee Nation, entitled to an allottable share in the lands of said tribe. On that date he applied to the Commission to the Five Civilized Tribes to have allotted to him certain lands, a portion of which was lot 4 of section 31, township 26 north, range 17 east, the land in controversy in this case. By the act of April 21, 1904, the restrictions upon the alienation of allotted lands other than homesteads of adult freedman citizens of the Five Civilized Tribes had been removed. After the passage of this act, the defendant Greenlees engaged in the enterprise of securing certain of these freedmen entitled to allotments to file upon unallotted lands of the Cherokee Nation which he desired to acquire, and after such allotments were made he would take deeds therefor from the allottees. For some time prior to January, 1905, C. E. Holderman had been employed by Greenlees to assist him in the procurement of such freedmen to file upon such tracts of unallotted land as he desired. Shortly before the land in controversy was applied for by Whitmire, Greenlees met Holderman and said to him, 'Now you know that Reinhardt farm up there;' and Holderman said, 'Yes, I know the farm; I

have been over the farm and know the land;" to which Greenlees responded, 'If you look on the plat when you go back to Tahlequah, you will find 40 acres of vacant land on the Reinhardt farm in section 31, and that is excessive holdings; he cannot hold it, and I want you to get a negro on it as quick as you can, and buy it.' Holderman answered, 'Now, I don't know exactly what is on that land, but there is some worm fences on there, or old rail fences, and if my recollection is right it has got a growth of this water oak timber on it.' And Greenlees says, 'That is the land; that is what I want; you file up and buy it for me as quick as you can.' Thereupon Holderman got in touch with Whitmire, who agreed to apply for the land as a portion of his allotment, and, when secured, to sell it to Greenlees for $450. Holderman then took Whitmire to the office of the Commission, and on the date first mentioned Whitmire made his formal application for the land. Whitmire had never been on the land and did not own the improvements thereon. Holderman was sworn by the Commission as a witness in support of the application, and testified that he had been over the land, as to the character of the improvements, and that Whitmire was the owner thereof, and that no one else owned the improvements or any part thereof, which was false, and known by him at the time to be false. Thereupon the land was set apart to Whitmire by the Commission, as a portion of his allotment selection, and certificate of allotment issued to him. Thereafter and on the same day Whitmire executed to Greenlees a warranty deed covering the land in controversy.

"On May 3, 1905, James M. Coker applied to the Commission to select an allotment of the land in controversy for his wife, Mary E. Coker, who was and had been for a long time the owner of the improvements thereon, which was refused on account of the prior selection by Whitmire; and on the same day he instituted for his wife, Mary E. Coker, a contest against Whitmire, asserting her right to allot the land by virtue of her ownership of the improvements upon the land. Mary E. Coker's claim to citizenship in the Cherokee Nation was then pending before the Department of the Interior, she being an intermarried Cherokee citizen. Her right to such citizenship was determined adverse to her by the Supreme Court of the United States in Cherokee Intermarriage Cases, 203 U. S. 76, 27 Sup. Ct. 29, 51 L. Ed. 96, decided November 5, 1906, and her right to such citizenship was finally denied by the Department on January 26, 1907. On January 1, 1907, Mary E. Coker executed to Charles H. Reinhardt, as guardian of Alma Fay Reinhardt, a bill of sale covering the improvements upon the land in controversy. No further steps seem to have been taken in the matter of this contest until April 13, 1907, when Mary A. Reinhardt, mother and natural guardian of Alma Fay Reinhardt, filed with the Commission in the contest case a petition to be allowed to substitute the name of Alma Fay Reinhardt as party contestant in lieu of the name of Mary E. Coker, the original contestant, which motion recites the above-mentioned bill of sale and that Alma Fay Reinhardt has taken possession of the improvements and is the owner thereof. This motion was denied by the Commission as appears from the opinion and order of the Commissioner of the Five Civilized Tribes of date May 22, 1907, and made part of the record in this case. The Commissioner says:

"'As will be seen from the above petition, the said Mary E. Coker did not attempt to dispose of the improvements located upon the land in controversy until January 1, 1907, on which date she attempted to assign the same to Alma Fay Reinhardt, who, by reason of said assignment, acquired no preferential right to take the land in allotment as against a citizen of the Cherokee Nation entitled to an allotment and who had, prior thereto, filed on same. Mullen v. Vawter, Chickasaw, No. 1677, and cases cited. Furthermore, the records in the possession of this office show that Albert Whitmire, the contestee, filed on the land in controversy on January 25, 1905, while the petition on behalf of Alma Fay Reinhardt to have her substituted in place of Mary E. Coker, the original contestant in Cherokee Allotment Contest No. 3202, was not filed until April 13, 1907, or over two years subsequent to the time that the said Albert Whitmire filed on said controverted land, and under the provisions of section 2 of the act of April 26, 1906 (34 Stat. 137, c. 1876), to the effect that

contests must be instituted within nine months after the original filing thereon by the adverse party, the said Alma Fay Reinhardt would be barred from instituting contest on her own behalf by reason of the expiration of the nine months limitation in such cases made and provided, and it being a general rule of law that the substitution of parties to a cause of action will not be permitted for the purpose of defeating the statute of limitations, the Commissioner is of the opinion that the petition filed by Mary A. Reinhardt as mother and natural guardian of Alma Fay Reinhardt, to substitute the name of the latter as party contestant in Cherokee Allotment Contest No. 3202, in lieu of the name of Mary E. Coker, the name of the original contestant therein, should be denied.'

"From this order Alma Fay Reinhardt appealed to the Commissioner of Indian Affairs, and the papers were duly transmitted to that office on December 14, 1907. Whitmire, having disposed of the land on the day that he allotted it, took no further interest in the matter of the contest, but, at the solicitation of Greenlees, authorized Riddle & Clapham, attorneys at Vinita, and Howe & Wright, attorneys at Washington, to represent him in the matter before the Commissioner of Indian Affairs, and the appearance of Howe & Wright was entered in the Department on December 19, 1907. Later, at the solicitation of relatives of Alma Fay Reinhardt, he authorized James K. Jones, of Washington, to represent him before the Department, and on March 2, 1908, Jones filed with the Commissioner of Indian Affairs a paper, signed by Whitmire, declaring his desire to relinquish all right to the land in contest and requesting that his allotment be canceled, so far as it related to this land. On March 4, 1908, this relinquishment was allowed, and the appeal dismissed. In the meantime, at the solicitation of Greenlees, Whitmire was induced to attempt to repudiate the so-called relinquishment, and executed an instrument to the effect that this relinquishment had been secured from him under a misconception induced by misrepresentations made to him by J. L. Allen, attorney for Alma Fay Reinhardt. This instrument was filed with the Department on March 9, 1908. On March 20, 1908, Whitmire appeared in Washington, evidently having been induced to go there by relatives of Alma Fay Reinhardt in the interests of her claim to the land, and with his attorney, Jones, appeared at the office of the Commissioner of Indian Affairs, and there stated under oath that Jones was the only attorney authorized to represent him in the contest, and that the papers filed by other parties were signed by him in ignorance of the allegations therein, and that he desired to withdraw from the contest, since he had never seen the land and did not desire to deprive the true owner of the improvements of the right to select the land in controversy.

"Thereafter, on April 2, 1908, the papers were returned to the Commissioner of the Five Civilized Tribes, with directions to thoroughly investigate and report the circumstances attending the execution of the application to relinquish, and, if he thought the application to relinquish should be allowed, to report whether the land should be awarded to Alma Fay Reinhardt. An investigation was made, and on June 24, 1908, the Commissioner to the Five Civilized Tribes made a report in which he found that Holderman, as agent for Greenlees, committed a fraud on the Commission to the Five Civilized Tribes, by reason of the false testimony given by him, as above stated, as to the ownership of the improvements when Whitmire made his selection of the land; that Whitmire was trying in good faith to relinquish his rights to the land, and that his relinquishment should be accepted; that the ownership of the improvements, having been transferred January 1, 1907, to Alma Fay Reinhardt, who took possession thereof at the time, her application to select said land in allotment should be accepted. The Commissioner of Indian Affairs concurred in the finding of the Commissioner of the Five Civilized Tribes, relative to the testimony of Holderman, as agent of Greenlees, at the time of Whitmire's selection, that the improvements belong to the latter. The Commissioner further found that, when Whitmire made his selection of the land, Greenlees, a noncitizen, was the real party in interest, who, through his agent, Holderman, secured an alleged warranty deed to the land from Whitmire for a consideration of $450, in a few minutes

after its selection by Whitmire; that the attorneys, Riddle & Clapham and Howe & Wright, had represented only the interest of Greenlees, claiming solely as a grantee of Whitmire, a Cherokee freedman, whose title to the land was incomplete when the alleged conveyance was made, and that Whitmire's application to relinquish should be accepted, and that Alma Fay Reinhardt had a preferential right to select the land, being the owner of the improvements.

"October 16, 1908, Greenlees, through his counsel, filed with the Department an appeal as intervener, alleging that the Commissioner of Indian Affairs erred in holding that he was not a party to the contest and not entitled to prosecute any right therein, and that Alma Fay Reinhardt had any rights in the premises. On October 23, 1908, attorneys appearing ostensibly for Whitmire, the contestee, filed a motion to dismiss Greenlees' appeal on the ground that he had no such interest as entitled him to be heard on appeal. On October 30, 1908, Greenlees through his counsel filed with the Department a petition for the exercise of its supervisory authority, praying that the record in the case be reviewed generally, so that his right might receive consideration, and a decision be rendered on the merits, stating that under the rulings of the Department a noncitizen may not prosecute an appeal from a decision in a properly instituted contest, and for that reason he invoked the supervisory action of the Department to protect his interests. In the final decision of the Secretary of the Interior, which was rendered on November 20, 1908, by Jesse E. Wilson, Assistant Secretary, after reviewing the case as above set forth, it is said:

"'A careful examination of the whole record shows that the findings of fact by the Commissioner and your office are sustained by preponderance of evidence. The testimony given by Holderman, as agent for said Greenlees when he induced said Whitmire to select the land in question, was untrue; and the fact that said Holderman secured from said Whitmire a warranty deed of said land to said Greenlees, in consideration for $450, immediately after the selection by Whitmire, gave Greenlees no vested right to the land; and if he has been injured by the action of Whitmire in the premises, he must rely upon his warranty in said deed for his remedy. * * * Since it is shown that said Greenlees, by his agent, did not act in good faith in procuring said tract to be allotted to said Whitmire, as above set forth, no good reason is shown why the petition for the exercise of the supervisory authority should be granted. The petition of said Greenlees should remain in the record, and not be returned to the petitioner, as recommended by the Commissioner. The petition for the supervisory authority of the Department is accordingly denied, and the motion to dismiss said appeal is hereby granted.'

"This action was begun by the United States in October, 1909, against the defendants Whitmire and Greenlees. The bill alleges that Whitmire is a duly enrolled freedman of the Cherokee Nation, and as such was entitled to take an allotment under the provisions of the Cherokee Allotment Act of July 1, 1902. It alleges the selection by him of the land in controversy on January 25, 1905, and the issuance to him of an allotment certificate therefor on that date. It alleges the false statement made to the Commission by Holderman relative to Whitmire's ownership of the improvements, and that the allotment certificate was procured to be issued to Whitmire by reason of this false statement with regard to the ownership of the improvements, and was therefore issued under a mistake of fact as to the ownership of the improvements. The bill then alleges an attempt on the part of Mary E. Coker to select the land as her allotment and the institution of her contest against Whitmire, her subsequent sale of the improvements to Alma Fay Reinhardt, and the relinquishment by Whitmire of any interest in the land, and the cancellation and annulment of his certificate of allotment by the Department.

"The bill charges the taking of the deed from Whitmire by Greenlees on January 25, 1905, within nine months from the date of allotment, and that Greenlees at the time knew that Whitmire was not the owner of the improvements, and that they belonged to Mary E. Coker, and that Whitmire was wholly without power or authority to make a valid conveyance of the lands to Greenlees; that Greenlees had full notice of the contest proceedings, and

appeared therein and attempted to present an appeal therefrom; that said deed from Whitmire to Greenlees is void, and constitutes a cloud upon the title to the lands in controversy. It further appears from the bill that in October, 1909, in a suit in the district court of Craig county, Okl., in which Alma Fay Reinhardt was plaintiff and the defendant Greenlees was defendant, Greenlees obtained a decree adjudging him to be the owner of and entitled to the possession of the land in controversy; that neither the United States nor the Cherokee Nation had notice of or was a party to this action; and that the District Court of Craig County was without jurisdiction to render such decree. Prayer that the allotment certificate issued to Whitmire and the deed from Whitmire to Greenlees be canceled as clouds upon the title of the Cherokee Nation, and that defendant Greenlees be enjoined from exercising any rights in and to said land under said state court decree."

Did the fact that the selection of the land in controversy by Whitmire was made upon false representations as to the ownership of the improvements upon the land justify the Department in canceling it by reason of the consent of Whitmire?

[1-6] The contest of Mary E. Coker, which was instituted within the nine months required by law, was abandoned. There was, therefore, no contest pending before the Department, which was instituted within the proper time. Unless the allotment to Whitmire in January, 1905, was absolutely void by reason of the false testimony regarding the ownership of the improvements, his right to select the land in allotment could not, under section 69 of the act of Congress of July 1, 1902 (32 Stat. 716, 726, c. 1375) be contested. Ballinger v. Frost, 216 U. S. 240, 30 Sup. Ct. 338, 54 L. Ed. 464. As Mrs. Coker was a noncitizen of the Cherokee Nation, and denied enrollment as a citizen, Whitmire, who was a duly enrolled adult freedman citizen of the Nation, had the right to select the land, and unless successfully contested, on a contest instituted within nine months, his title became perfect and as of the date of the selection (Thomason v. Wellman & Rhoades, 206 Fed. 895, 124 C. C. A. 555), and neither the Secretary of the Interior, nor any subordinate officer of the Department had the right thereafter to cancel the allotment (United States v. Dowden, 220 Fed. 277, 136 C. C. A. 293). The action of the Department canceling Whitmire's allotment was without authority of law and void.

Was the fraud practiced by Whitmire and Greenlees, the latter acting by his agent, Holderman, of such a nature as to authorize a court of equity in a direct proceeding to cancel it? By the provisions of Act July 1, 1902, c. 1375, the owner of the improvements, who was entitled to an allotment, had the prior right as against any other citizen to select the land upon which the improvements were located, and where any other citizen first selected such land, the owner of the improvements, being entitled to an allotment, could within nine months contest such selection. This clearly applied only to those who under the law were entitled to allotments, by reason of being enrolled citizens of the Cherokee Nation. Mrs. Coker was not such a citizen, and therefore was not entitled to make a selection, and Whitmire, or any other enrolled citizen of the Nation, had a perfect right to select the land and have it allotted to him, although he was not the owner of the improvements.

By Act March 2, 1907, c. 2521, 34 Stat. 1220, white persons who had intermarried with Cherokee citizens prior to December 16, 1895, and made permanent and valuable improvements on land belonging to the Nation, prior to the decision of the Cherokee Intermarriage Cases, 203 U. S. 76, 27 Sup. Ct. 29, 51 L. Ed. 96, the class Mrs. Coker belonged to, were given the right to sell such improvements, but only to a citizen of the Cherokee Nation entitled to select an allotment.. This act contains a proviso which reads:

"That where citizens of the Cherokee Nation entitled to allotments have heretofore applied for 'lands on which' intermarried white persons own improvements, such citizens, entitled to allotments, shall have the prior right to purchase such improvements as herein provided."

From this it clearly appears that Congress recognized the right of a citizen of the Nation, who was not the owner of the improvements, to make formal selection of the lands on which they were situated, subject only to make compensation for the improvements to the white person, who had intermarried with a citizen before December 16, 1895. As was held by Judge Campbell, all that Mrs. Coker's ownership of the improvements would have entitled her to, had she not conveyed them to her granddaughter, would have been compensation for the improvements, but she could not have deprived Whitmire of the allotment. As her conveyance to her granddaughter was made prior to the enactment of this act, she had lost her right to have the land appraised, in order to obtain the benefits of the provisions of that act. Boudinot v. Morris, 26 Okl. 768, 110 Pac. 894.

The fact that Whitmire relinquished this allotment on March 2, 1908, cannot affect the rights of his vendee, Greenlees, as Whitmire, at that date, had nothing to relinquish, and Greenlees was not a party to the proceedings pending before the Department. Garfield v. Goldsby, 211 U. S. 249, 29 Sup. Ct. 62, 53 L. Ed. 168. As Whitmire's title was good, it is immaterial that Greenlees had knowledge of Whitmire's false statement as to the ownership of the improvements. There was no restriction on the right of Whitmire to sell the land as soon as his allotment had been made, and his deed conveyed a perfect title.

Section 21 of Act July 1, 1902, c. 1375, makes the allotment certificate issued by the Dawes Commission conclusive evidence of the right of allottee to the land described therein. The fact that no patent had been issued to Whitmire when he made the conveyance to Greenlees is immaterial. When the right to a patent has once become vested under the law, it is equivalent, so far as the government is concerned, to a patent actually issued. Simmons v. Wagner, 101 U. S. 260, 25 L. Ed. 910; Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423; Hedrick v. Railroad Co., 167 U. S. 673, 17 Sup. Ct. 922, 42 L. Ed. 320; Wallace v. Adams, 143 Fed. 716, 74 C. C. A. 540; affirmed Id., 204 U. S. 415, 27 Sup. Ct. 363, 51 L. Ed. 547. An allotment certificate has the same effect as the action of the Land Department in the disposition of the public lands within its control. Wallace v. Adams, supra; United States v. Dowden, supra.

Counsel for the plaintiff in error rely and lay great stress on what

has been determined by the Supreme Court of Oklahoma in Abbott v. Perry, 149 Pac. 202, and other cases similar to that case. But they can have no possible application to the facts of the instant case. In those cases a contest had been properly instituted before the department, within the time prescribed by law, and after a hearing determined upon conflicting evidence, and the court followed the well-established rule of law that the findings of facts made by the proper officials, constituted by law to determine such facts, when sustained by substantial evidence, are conclusive and binding on the courts. Howe v. Parker, 190 Fed. 738, 746, 111 C. C. A. 466, 474.

In the case at bar there was no determination of a legal contest pending before the Department when the allotment was canceled. The contest of Alma Fay Reinhardt was dismissed by the Indian Commission, and upon appeal to the Commissioner of Indian Affairs the cancellation was made by the Commissioner, not because the Commission had erred in its decision, but solely upon the ground that Whitmire had filed a relinquishment.

Whether Greenlees could have maintained an action to recover this land as a plaintiff, in view of the fact that he did not come into court with clean hands, is not involved in this case, and therefore cannot be determined.

The decree of the court below was right and is affirmed.